ORIGINAL

FILED

JUL 22 2008

THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

HARDIE'S
FRUIT & VEGETABLE CO.- SOUTH, LP,

PLAINTIFF,

vs.

UNITED STATES OF AMERICA,

DEFENDANT.

No. 08-534 C

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Johnathan M. Bailey**
**BAILEY & BAILEY, P.C.**
**The Milam Building, Suite 711**
**115 East Travis Street**
**San Antonio, Texas 78205-1611**
**Telephone: (210) 225-7747**
**Facsimile (210) 225-8246**

ORIGINAL

UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

FILED
JUL 22 2008
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HARDIE'S FRUIT & VEGETABLE CO.- SOUTH, LP, PLAINTIFF, | § | |
| vs. | § | No. 08-534 C |
| UNITED STATES OF AMERICA, DEFENDANT. | § | |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, Hardie's Fruit & Vegetable Co.- South, LP ["Hardie's"], by and through its undersigned counsel, and alleges the following for its Complaint:

JURISDICTION

1. Jurisdiction in this action is conferred on this Court by 28 U.S.C. § 1491(b)(1). This is an action by an interested party objecting to an alleged violation of statute or regulation in connection with a procurement.

PARTIES

2. The Plaintiff, Hardie's Fruit & Vegetable Co.- South, LP, ["Hardie's"] is a Texas Limited Partnership, with its principal offices at 1005 North Cockrell Road, Dallas, Texas, 75211.

3. Defendant, United States of America, acting through the United States Small Business Administration and the Defense Logistics Agency, [the "Government"], executive agencies of the federal government.

## I. ALLEGATIONS

4. Solicitation number SPM300-06-R-0008 ["the Solicitation"] was issued for fresh produce supply to a large number of Government facilities divided into a number of geographic zones. Exhibit 1.

5. The objective of the Solicitation was to enter into long-term contracts with commercial firms to supply a full line of USDA No.1 or better quality Fresh Fruit and Vegetable (FF&V) products to Department of Defense (DoD) Troop Issue customers and non-DoD customers to include Job Corps and USDA Supported Customers (Schools and Indian Tribal Organizations). Exhibit 2.

6. The range of entities to be serviced was divided into three major groupings: 1) Group 1 - DoD & other non-USDA School Customers, 2) Group 2 - USDA School Customers, and 3) Group 3 - DoD Export. Exhibit 2.

7. The services to be provided under the Solicitation were also broken down geographically into 12 Regions and 43 zones. The individual regions and zones are listed in Exhibit 2.

8. The Solicitation was set aside 100% for exclusive small business competition. Exhibit 3.

9. As noted in the Solicitation, the U.S. Small Business Administration ["SBA"] issued a waiver of the Non-manufacturer Rule (13 CFR Sec. 121.406) thereby allowing small business receiving the award under a small business set-aside to "procure products from large businesses." Exhibit 3.

10. The resulting contracts awarded under the Solicitation were to be indefinite delivery, indefinite quantity contracts with Economic Price Adjustment

provisions based upon cost of materials. Each contract was to provide for an indefinite quantity, within stated limits, of specific supplies or services to be furnished during a fixed period, with deliveries to be scheduled by placing orders with the contractor pursuant to FAR Part 16. Exhibit 3.

11. These contracts were to be for an 18-month base term with three18-month option periods, with a maximum period of 72 months (6 years). Exhibit 3.

12. The Solicitation provided estimated values for each zone as listed in Exhibit 3.

13. The Solicitation contains a number of very specific primary and vital services which any successful offeror must be capable to perform at any of the listed locations:

> **XIII. DELIVERY INSTRUCTIONS**
>
> A. Vendors shall ensure all products are delivered in sanitary trucks that are of a commercially acceptable standard. All trucks shall maintain proper temperatures, as determined through standard commercial practices.
>
> B. Deliveries shall be F.O.B. destination to all ordering activities and delivery points. All items will be delivered to customer locations, free of damage, with all packaging and packing intact.
>
> The contractor shall remove all excess pallets used for delivery from the delivery point. A listing of all the delivery points per zone can be found at: http://www.dscp.dla.mil/subs/produce/pv/region.htm
>
> C. Troop installation & USDA delivery schedules (days and times) routes and stop-off sequence will be coordinated and verified with the customers on a post award basis by the awardee(s).

In general, each Troop customer receives three (3) deliveries per week and each USDA customer receives one (1) delivery per week.

D. Products for individual customers/dining facilities must be segregated. Many of the military bases have more than one delivery point. All product shall be segregated by drop-off point and loaded into the delivery vehicle in reverse drop sequence. The intent is to provide expeditious off-loading and delivery to the customer.

E. The offeror shall also ensure that the personnel loading and delivering the product provide prompt and efficient service to the customer.

## XIV. INSPECTION AND ACCEPTANCE

A. Inspection and Acceptance of products will be performed at destination. The inspection is normally limited to identity, count and condition; however, this may be expanded if deemed necessary by either the military Veterinary Inspector, Dining Facility Manager, Food Service Advisor/Officer, or the Contracting Officer. Delivery vehicles may be required to stop at a central location for inspection before proceeding to the assigned delivery point(s). In addition, the delivery vehicles will be inspected for cleanliness and condition. Supplies transported in vehicles that are not sanitary, or which are not equipped to maintain prescribed temperatures, may be rejected without further inspection.

B. The authorized receiving official at each delivery point is responsible for inspecting and accepting products as they are delivered. The delivery ticket shall not be signed prior to the inspection of each product. All verages/shortages/returns are to be noted on the delivery ticket by the receiving official and truck driver. The authorized receiving official's signature on the delivery ticket denotes acceptance of the product.

C. The contractor shall forward three (3) copies of the delivery ticket with the shipment. The receiving official will use the delivery ticket as the receipt document. Two (2) copies of the signed and annotated delivery ticket will serve as the acceptance document. No electronic invoice may be submitted for payment until acceptance is verified.

> Additionally, upon completing the delivery (or deliveries ) and before the carrier leaves the installation, copies of the invoices may be required to be delivered to a central "Accounting/Troop Issue" activity on the installation.

Exhibit 4.

14. Other significant services required by the Solicitation made it clear that any successful offeror would be required to ship from their own facility, or specific geographic area. The Solicitation requires with respect to offeror capacity and facilities:

> **XI. ITEM AVAILABILITY**
>
> A. Vendors must have access to items in sufficient quantities to fill all ordering activity requirements. It is critical that items ordered be routinely delivered on a "skip day" basis, at a minimum.
>
> B. Vendors shall notify the customer within 24 hours of order placement of the non-availability of any item. Vendors shall offer the customer a substitute of equal or higher quality and at an equal or lower cost, or advise them of the not-in-stock position of the item. Substituted product shall not be delivered without prior consent by the customer. Substituted items must be noted as such on the invoice.
>
> **XII. PACKAGING, PACKING, LABELING AND MARKINGS**
> A. All packaging and packing shall be in accordance with good commercial practice. Labeling shall be in accordance with commercial labeling complying with the Federal Food, Drug and Cosmetic Act and regulations promulgated thereunder. Shipping containers shall be in compliance with the National Motor Freight Classification and Uniform Freight Classification Code.
>
> B. To ensure that the carrier and the receiving activity properly handle and store items, standard commercial precautionary markings such as "KEEP REFRIGERATED" shall be used on all cases when appropriate.

Exhibit 5.

* * *

**XXIV. WAREHOUSING AND SANITATION PROGRAM/STORED PRODUCT PEST MANAGEMENT**

The contractor shall develop and maintain a sanitation program and a stored product pest management program for food and other co-located non-food items that comply with industry standard programs such as the Code of Federal Regulations, Title 21, part 110, Food Manufacturing Practices, the Federal Insecticide, Fungicide and Rodenticide Act, the Food, Drug, and Cosmetic Act of 1938 as well as all pertinent state and local laws and regulations. Records of inspections performed by the firm, subcontractor, or recognized industry association shall be maintained and made available to the Government at the Contracting Officer's request. Any findings by the firm or its agent documenting a critical sanitation deficiency shall be reported immediately to the Contracting Officer with an attached report of corrective action.

Exhibit 6.

* * *

**XXX. FORCE PROTECTION**

DSCP Subsistence Directorate provides world-wide subsistence logistics support during peace time as well as during regional conflicts, contingency operations, national emergencies, and natural disasters. At any time, the United States Government, its personnel, resources and interests may be the target of enemy aggression to include espionage, sabotage, or terrorism.

This increased risk requires DSCP to take steps to ensure measures are taken to prevent the deliberate tampering and contamination of subsistence items. The offeror must ensure that products and/or packaging have not been tampered with or contaminated throughout the growing, storage, and delivery process. The offeror must immediately inform DSCP Subsistence of any attempt or suspected attempt by any party or parties, known or unknown, to tamper with or contaminate subsistence supplies.

As the holder of a contract with the Department of Defense, the awardees should be aware of the vital role they play in

> supporting our customers. It is incumbent upon the awardees to take all necessary actions to secure product delivered to all military customers, as well as any applicable commercial destinations.
>
> **XXXI. SURGE/MOBILIZATION**
>
> 1. *Surge*: The capability to handle a large increase in case volume for short periods of time with very little lead-time may be required at various times throughout the term of the contract.
>
> Services may experience unscheduled arrival of troops, with only a few hours notice, as part of normal operations, where the order requirements could more than double from their normal usage on a given days notice. The timing of these types of surges will be impossible to anticipate. Pricing for items furnished in this fashion shall be the same as those for routine, SPM300-06-R-0008 Page 21 of 78 non-surge orders.
>
> 2. *Mobilization:* Offeror must be capable of support a tripling of ordering requirements for an extended period of time in the event of a full-scale military mobilization or national emergency. As with surge support, pricing for items furnished in this fashion shall be the same as those for routine, non-mobilization orders.
>
> 3. When units deploy for training exercises outside their zone, their current vendor will be given the opportunity to supply the unit's requirements. If the current vendor cannot perform this function at no additional cost, or the Vendor does not wish to accept the mission, the requirements will be turned over to the vendor supporting the zone in which training will occur.

Exhibit 7.

15. Offers under the Solicitation were due on September 21, 2006. Hardie's timely submitted a proposal. Exhibit 1.

16. On March 12, 2008, Hardie's received a letter from the Defense Logistics Agency, Defense Supply Center Philadelphia ["DSCP"] announcing that award under

the Solicitation would be made to M&S Foods, Ltd., Co. ["M&S Foods"] for the San Antonio Zone. Exhibit 8.

17. M&S has its principal office in Newberry, Florida. M&S performs food distribution contracts to public facilities in the State of Florida through subcontracting relationships with large business food distributors identified on its corporate website. Exhibit 9.

18. M&S owns no warehouse or other produce storage facilities in the State of Texas. Exhibit 9. M&S does not own any distribution facilities or vehicles in the State of Texas. Exhibit 9.

19. M&S must rely entirely upon the supply and distribution capabilities of a subcontractor to perform this contract, as it only has at most the ability to process orders and billing with its own resources. Exhibit 9.

20. M&S was previously awarded certain interim contracts for this requirement starting December, 2006, for interim coverage at Fort Hood, Texas while award under the present Solicitation was pending. M&S' apparently successful proposal on that contract was based upon a subcontract with Fresh Point-City Produce LP, a wholly-owned subsidiary of Sysco Corporation ["Sysco"]. Exhibit 10. Because of M&S' lack of capabilities to perform the contract, it was unduly reliant upon Sysco and Sysco's affiliates to perform those contracts.

21. M&S is not a legitimate small business qualified to perform this requirement, but is, instead, entirely reliant upon produce giant Sysco Corporation, a large business.

22. Under filing number 800601820, FreshPoint is the Assumed Name of a foreign limited partnership formed in Delaware. Exhibit 11. The official name of FreshPoint is FreshPoint – City Produce LP. Exhibit 11. The General Partner of FreshPoint – City Produce LP is FreshPoint, Inc. Exhibit 11. FreshPoint, Inc. is a wholly-owned subsidiary of Sysco Corporation. Exhibit 12, 13, and 14. In the Texas Franchise Tax information return for FreshPoint – City Produce LP, the address is listed as 1390 Enclave Parkway, Houston Texas 77077. Exhibit 15. The same address is used for Sysco Corporate Offices in Houston, Texas. Exhibit 16.

23. M&S is relying upon the same subcontract relationship with Sysco to perform any contract awarded under the subject Solicitation.

24. M&S has received a number of weekly awards for furnishing produce in 2007, using Sysco as its subcontractor without exception, further deepening its reliance upon Sysco.

25. The subject procurement was set aside exclusively for small business competition. As such offerors and their affiliates in aggregate must not exceed the applicable size standard for this procurement. The ostensible subcontractor rule is an independent basis for finding affiliation between two concerns. 13 C.F.R. § 121.103(h)(4). This subsection provides:

> (4) A contractor and its ostensible subcontractor are treated as joint venturers, and therefore affiliates, for size determination purposes. An ostensible subcontractor is a subcontractor that performs primary and vital requirements of a contract, or of an order under a multiple award schedule contract, or a subcontractor upon which the prime contractor is unusually reliant. All aspects of the relationship between the prime and subcontractor are considered, including, but not limited to, the terms of the proposal (such as contract

> management, technical responsibilities, and the percentage of subcontracted work), agreements between the prime and subcontractor (such as bonding assistance or the teaming agreement), and whether the subcontractor is the incumbent contractor and is ineligible to submit a proposal because it exceeds the applicable size standard for that solicitation.

13 C.F.R. § 121.103(h)(4).

26. The purpose of the rule is to prevent small firms from forming superficial subcontract relationships with large firms to evade SBA's size requirements.

27. The ostensible subcontractor rule permits an SBA Area Office to find when making a size determination that a subcontractor and a prime contractor, in effect, have formed a joint venture (and are thus affiliates) for determining size, even though the actual agreement is in the form of a subcontract or other non-joint venture contractual arrangement.

28. An ostensible subcontractor is a subcontractor that performs primary and vital requirements of a contract or a subcontractor upon which the prime contractor is unusually reliant. 13 C.F.R. § 121.103(h)(4). This is therefore a disjunctive test. If the subcontractor <u>either</u> performs "primary and vital requirements" of the contract <u>or</u> is one upon which the prime contractor is "unduly reliant", then the "ostensible subcontractor" rule will apply.

29. In determining whether a subcontractor performs primary and vital requirements or that the prime is unusually reliant, all aspects of the prime-subcontractor relationship must be considered, including, but not limited to, the terms of the proposal, agreements between the prime and the subcontractor (such as teaming agreements), and whether the subcontractor is an incumbent contractor and is ineligible

to submit a proposal because it exceeds the size requirements for the solicitation.

30. In the instant case, both the "primary and vital requirements" prong, and the "unduly reliant" prong of the ostensible subcontractor rule apply.

31. Sysco will perform virtually all primary and vital requirements of the contract awarded on this Solicitation. Sysco warehouses and delivers all of the actual food purchased by the Government. M&S' only role in the contract is to receive the orders, pass them to Sysco , then bill the Government based on billing prepared by Sysco . M&S, therefore, performs no actual productive work on the contract.

32. Furthermore, because M&S has no produce inventory of its own, has no warehouse capability, and has no distribution capability of its own, it is unduly reliant on Sysco. M&S literally cannot perform any requirements of this contract without Sysco. It cannot deliver any of the required items of food with its own efforts. It does not have the product, storage facilities or distribution capability to do so.

33. Because M&S lacks the capability to perform the primary and vital requirements of this procurement without reliance upon the resources of Sysco, the two are affiliated under the ostensible subcontractor rule and their size is aggregated, and M&S is therefore other than small.

34. If all that was required of an offeror under the Solicitation was to receive an order and simply pass it along to a large business source of supply, without more, there would be no need for the Government to address such details of delivery, title to pallets, much less for the Government to conduct a site visit to an office that does nothing but receive orders and pass them along. A site visit to a facility that handles and ships fresh produce would make perfect sense, though.

35. Without falling back on Sysco's capabilities, there is no method by which M&S could demonstrate the ability to provide the product, meet the required delivery schedules, or demonstrate an ability to protect secure food supplies from contamination and tampering.

Sysco Has The Power of Negative Control Over M&S

36. As discussed at length above, it is clear that without the resources and capabilities of Sysco, M&S could not perform this contract at all. Because M&S is totally dependent upon Sysco for all aspects of actual performance, Sysco has the power of negative control over M&S because, if Sysco were to withhold its services, M&S would fail entirely and default on this contract, jeopardizing the company as a whole. Because M&S is utterly dependent upon Sysco, Sysco has power of negative control over M&S and the two firms are affiliated for size purposes.

The Size Protest Process

37. Plaintiff timely filed a size protest with the Contracting Officer within five calendar days of the date it received notice of award to M&S.

38. On March 18, 2008, the Contracting Officer forwarded the size protest to the Small Business Administration (SBA) Office of Government Contracting- Area III Area Office, in Atlanta, Georgia. Exhibit 17.

39. On April 17, 2008, the Area Office for Area III of the SBA issued a size determination finding that M&S was not a legitimate small business. The Area Office SBA acknowledged the waiver of the non-manufacture rule was granted for the procurement allowing a small business to buy from a large business. The Area Office of

the SBA stated that the waiver does not cede the prime contractor's responsibility to perform the primary and vital requirements of the contract. The Area Office found M&S not to be a qualified small business for this procurement due to its undue reliance upon the resources of Sysco to be able to perform the requirements of the Solicitation. Exhibit 17.

40. The Area Office also made the following factual findings which are pertinent:

> Are there discrete tasks to be performed by each of the teaming partners or is there commingling of personnel and resource: MS stated that the teaming agreement proposed is a specific plan for the performance of the contract. The documentation provided shows City will procure and deliver perishable products. DSCP is also a customer of City. In a letter submitted with the proposal it states in bold print that, "MS will utilize Sysco as its supplier/shipper. MS is responsible for all accounts payables and receivables incurred in this solicitation."
>
> * * * *
>
> On March 20, 2008, the Area Office requested the NAICS code for this procurement since we could not find it on the solicitation. The Small Business Specialist for the procuring office responded "NAICS 424480, Fresh Fruit & Vegetable Merchant Wholesalers, with Nonmanufacturer size standard of 500 employees." At this time we requested the waiver of the Nonmanufacturer Rule since this NAICS code was not on the waiver list. A waiver of the Nonmanufacturer Rule was granted on March 16, 2006, from the Small Business Administration in Washington, D.C. The waiver was for the purchase to cover the full line of various fresh fruits and vegetables under the above mentioned contract. This seems to be the correct NAICS code for this procurement since this is the descriptor used in the first page of the solicitation (Full Line Fresh Fruit and Vegetable). Thus, a waiver allows a small business to buy from a large business. This waiver does not relinquish the Prime contractor from performing the primary and vital requirements with its own

employees. The waiver does not prevent us from determining if the ostensible subcontractor rule applies. See 13 CFR § 121.103(h) (4).

The NAICS code 424480 states Fresh Fruit and Vegetable Merchant Wholesalers. According to the NAICS definition, this industry comprises establishes primary engaged in the merchant wholesale distribution of fresh fruits and vegetables. According to Webster's Dictionary a wholesaler is defined as a business that sells in large quantities to other businesses. According to the dictionary, to distribute is to divide, deliver or give out the fruits and vegetables. The scope of work indicates that the contractor shall deliver the produce to the San Antonio area. In the Delivery Instructions of the solicitation Section XII, vendors shall ensure all products are delivered in sanitary trucks. Products for individual customers/dining facilities must be segregated. Many of the military bases have more than one delivery point. In general, each Troop customer receives three deliveries per week and each USDA customer receives one delivery per week. In section XI, Item Availability, vendors must have access to items in sufficient quantities to fill al ordering activity requirements. Section XII, Packaging, Packing, Labeling and Markings, all packaging and packing shall be in accordance with good commercial destination. The solicitation MS submitted under Place of Performance, offeror intends to use Fresh Point/City Produce at 5830 Rocky Point Drive in San Antonio, Texas. The solicitation clearly outlines the requirements as ordering from electronic catalogs, customer services, ordering system, order placement, item availability, packaging, packing, labeling and markings, delivery instructions, inspection and acceptance, rejection/return procedures, invoicing, etc.

The Department of Health & Human Services inspected the City facilities in Texas and submitted a detail report on their findings. Specifically as defined in the work statement, the delivery and warehousing of the produce are the primary and vital requirements of this contract. MS states in the proposal that they are handling the day to day management of this solicitation. MS is responsible for all accounts payables and receivables incurred in this solicitation. However, without City, MS would not have the ability to provide the produce, meet the required deliveries,

warehouse the produce, label, package and distribute the produce.

Documentation provided to SBA clearly states that the primary and vital requirements of the contract – the wholesale distribution of fruits and vegetables – will be performed by City, a company owned in part by Fresh Point, which is owned by Sysco, a large company (As stated by the Department of Health and Human Services, Establishment Inspection Report dated 2/27/2006 submitted as an attachment with MS proposal). The teaming agreement states that MS shall take the lead in negotiating subject to review and approval by City. Further MS shall, as Primary Contractor, retain primary control over and responsibility for prime contractor performance, subject to review and approval by City. MS will submit a prime contract proposal and will be responsible for the final editing, printing and submittal of the necessary proposal documents to the government, all subject to review and approval by City. In the teaming agreement statement of work, the security fence surrounding City's facility is outlined, including but not limited to inspection at the dock door, refrigerated warehouse temperature sensors and any variation signals an alarm, and delivery vehicles are washed and the interior is pressured washed daily and pre-cooled prior to any loadings of products. MS clearly cannot perform any of the requirements of this procurement without City, the more complex and costly function of the contract.

Based on the totality of the circumstances, taking into consideration all of the above factors, it is determined that MS is unduly reliant on its subcontractor, City. The contractor is also relying heavily on the experience and background of the subcontractor, who is supplying and shipping the produce. In Size Appeal of Crown Support Services, Inc., SBA No. SIZ-3294 (1990), one of the factors mentioned was the emphasis placed upon the subcontractor's background and skills.

Exhibit 9.

41. On April 22, 2008, M&S Foods filed an appeal with the SBA Office of Hearings and Appeals (OHA). Exhibit 17.

42. On July 15, 2008, the United States Small Business Administration Office of Hearing and Appeals reversed the Area Office of the SBA's size determination and ruled that M&S Foods was a small business. Exhibit 17.

43. The SBA OHA did not find that M&S was capable of performing all aspects of the Solicitation. Instead, the SBA OHA held that the SBA's grant of a waiver of the non-manufacturer rule (13 CFR 121.406) meant that M&S did not have to perform many of the primary and vital requirements of the Solicitation with its own efforts, despite the fact that, as the Solicitation expressly noted, the waiver only permitted offerors to "to procure products from large businesses", not wholesale subcontract the most labor intensive and vital requirements of the Solicitation. Exhibit 17 at 5.

44. Because SBA OHA's decision constitutes legal error, Plaintiff brings this action.

## Injunctive Relief

45. Hardie's seeks temporary and preliminary injunctive relief to enjoin the agency from awarding, or in the event that award is made before relief is issued, proceeding with performance of, any contract under the Solicitation to M&S Foods.

46. Hardie's stands to suffer irreparable harm in that, with respect to the start of performance by M&S Foods, in the form of lost profits which this Court has recognized in many previous pre-award procurement cases as sufficient harm to warrant grant of injunctive relief in bid protests.

47. Hardie's has a substantial likelihood of prevailing on the merits of this action. The decision of SBA OHA clearly was erroneous. Accordingly, Hardie's has a substantial likelihood of success on the merits of this action.

48. Hardie's has no adequate remedy at law, as there is no cause of action for money damages available to Hardie's that could make it whole for these harms.

49. Grant of injunctive relief will serve the public interest in that it will maintain the integrity of the procurement process, and further will the Competition in Contracting Act (10 USC § 2304), preserve small business set aside for small businesses, and serve the public interests recognized by Congress when it enacted the automatic stay provisions of the Competition in Contracting Act.

50. Issuance of injunctive relief will not harm Defendant, in that Defendant has contractual options and other procurement means by which it can obtain necessary services in an uninterrupted manner during the short period of time this judicial review will consume.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that upon review of this matter, this Court grant the following relief:

1. Take jurisdiction of this action;

2. Expedite the hearing of this action;

3. Issue a Temporary Restraining Order enjoining performance by the Government pending a hearing on Hardie's Fruit & Vegetable Co. – South, L.P. motion for preliminary injunction; and

4. Issue a Preliminary Injunction enjoining performance by the Government pending final hearing on this matter;

5. Issue permanent declaratory relief providing that the complained of award is illegal.

6. Such other appropriate relief to which Plaintiff is entitled.

Dated: July 18, 2008

Respectfully Submitted,

Johnathan M. Bailey
SBN 24000009

Of Counsel:
BAILEY & BAILEY, P.C.
Milam Building, Suite 711
115 East Travis
San Antonio, Texas 78205-1611
Telephone: (210) 225-7747
Facsimile: (210) 225-8246

Attorneys for Plaintiff
HARDIE'S FRUIT &
VEGETABLE, CO.- SOUTH, LP.

**SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS**
***OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30***

1. REQUISITION NUMBER
PAGE 1 OF 78

2. CONTRACT NO.
3. AWARD/EFFECTIVE DATE
4. ORDER NUMBER
5. SOLICITATION NUMBER: SPM300-06-R-0008
6. SOLICITATION ISSUE DATE: 24 JUL 2006

7. FOR SOLICITATION INFORMATION CALL:
a. NAME: FRANK HOLDER / STEVEN MERCH
b. TELEPHONE NUMBER *(No collect calls)*: 215-737-3311 / 4508
8. OFFER DUE DATE/ LOCAL TIME: SEE PAGE 2

9. ISSUED BY CODE
DEFENSE SUPPLY CENTER PHILADELPHIA
SUBSISTENCE SUPPLIER OPERATIONS
700 ROBBINS AVENUE
PHILADELPHIA, PA 19111-5092

10. THIS ACQUISITON IS
☐ UNRESTRICTED OR ☑ SET ASIDE: 100 % FOR:
☑ SMALL BUSINESS ☐ EMERGING SMALL BUSINESS
☐ HUBZONE SMALL BUSINESS
☐ SERVICE-DISABLED VETERAN-OWNED SMALL BUSINESS ☐ 8(A)
NAICS: NonMFG
SIZE STANDARD: 500

11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED
☐ SEE SCHEDULE
12. DISCOUNT TERMS
☐ 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)
13b. RATING
14. METHOD OF SOLICITATION
☐ RFQ ☐ IFB ☑ RFP

15. DELIVER TO CODE
SEE PAGE 9
16. ADMINISTERED BY CODE

17a. CONTRACTOR/ OFFEROR CODE FACILITY CODE

TELEPHONE NO.

18a. PAYMENT WILL BE MADE BY CODE S33150
DFAS-COLUMBUS
ATTN: DFAS-CO-SES
PO BOX 182317
COLUMBUS, OHIO 43218-6260

☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER
18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED ☐ SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | FULL LINE FRESH FRUIT AND VEGETABLE SUPPORT FOR DOD & NON-DOD ACTIVITIES LOCATED THROUGHOUT THE UNITED STATES SEE PAGE 2 FOR BREAKOUT OF REGIONS/ZONES | | | | |

*(Use Reverse and/or Attach Additional Sheets as Necessary)*

25. ACCOUNTING AND APPROPRIATION DATA
26. TOTAL AWARD AMOUNT *(For Govt. Use Only)*

☑ 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA ☑ ARE ☐ ARE NOT ATTACHED
☐ 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED

☑ 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN 1 COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED

☐ 29. AWARD OF CONTRACT: REF. ____________ OFFER DATED ____________. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

30a. SIGNATURE OF OFFEROR/CONTRACTOR
31a. UNITED STATES OF AMERICA *(SIGNATURE OF CONTRACTING OFFICER)*

30b. NAME AND TITLE OF SIGNER *(Type or print)*
30c. DATE SIGNED
31b. NAME OF CONTRACTING OFFICER *(Type or print)*: FRANK HOLDER
31c. DATE SIGNED

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

EXHIBIT
1

**STANDARD FORM 1449** (REV. 3/2005)
Prescribed by GSA - FAR (48 CFR) 53.212

**BLOCK 8** (continued):
OFFER DUE DATE/LOCAL TIME: All offers are due 1:00PM EDT. Offer due dates are as follows:

| REGIONS | ZONES | OFFER DUE DATE |
|---|---|---|
| Calif. Plus | N. CA, NW NV, Pacific Expt | Thursday 24 August 2006 |
| | LA | Thursday 24 August 2006 |
| | SD | Thursday 24 August 2006 |
| | AZ | Thursday 24 August 2006 |
| | So NV & Parts of Utah | Thursday 24 August 2006 |
| Southeast | Al & FL Panhandle | Thursday 24 August 2006 |
| | GA | Thursday 24 August 2006 |
| | FL North | Thursday 24 August 2006 |
| | FL Central | Thursday 24 August 2006 |
| | FL South | Thursday 24 August 2006 |
| | Puerto Rico | Thursday 24 August 2006 |
| Southern | Arkansas | Thursday 24 August 2006 |
| | Louisiana | Thursday 24 August 2006 |
| | Mississippi | Thursday 24 August 2006 |
| Northwest | Seattle | Thursday 21 September 2006 |
| | Spokane, Idaho | Thursday 21 September 2006 |
| | Oregon | Thursday 21 September 2006 |
| | Alaska | Thursday 21 September 2006 |
| Denver | Colorado,W. SD, E Wyoming | Thursday 21 September 2006 |
| | Utah | Thursday 21 September 2006 |
| | Montana, N. WY, W ND, SD | Thursday 21 September 2006 |
| Texas | Dallas/ Ft. Worth | Thursday 21 September 2006 |
| | El Paso | Thursday 21 September 2006 |
| | Houston | Thursday 21 September 2006 |
| | San Antonio | Thursday 21 September 2006 |
| New England | CT, MASS,ME, NH, RI, Vt | Thursday 21 September 2006 |
| | Upper NY | Thursday 21 September 2006 |
| Central | Missouri | Thursday 12 October 2006 |
| | KY, OH, IND | Thursday 12 October 2006 |
| | Tennessee | Thursday 12 October 2006 |
| South Central | NM, COL | Thursday 12 October 2006 |
| | OK, TX Panhandle | Thursday 12 October 2006 |
| | NE & Kansas | Thursday 12 October 2006 |
| Great Lakes | Illinois | Thursday 12 October 2006 |
| | MICH & Part of Ohio | Thursday 12 October 2006 |
| | Pt Ohio, W. Pa., WV | Thursday 12 October 2006 |
| Mid West | Wisconsin | Thursday 12 October 2006 |
| | Minnesota, E SD | Thursday 12 October 2006 |
| | Iowa | Thursday 12 October 2006 |
| | ND | Thursday 12 October 2006 |
| Mid Atlantic | NY, NJ, Pa | Thursday 12 October 2006 |

# STATEMENT OF WORK

## SCOPE

### I. INTRODUCTION

A. The Defense Supply Center Philadelphia (DSCP) intends to enter into Long-Term contracts with commercial firms to supply a full line of USDA No.1 or better Fresh Fruit and Vegetable (FF&V) products to Department of Defense (DoD) Troop Issue customers and non-DoD customers to include Job Corps and USDA Supported Customers (Schools and Indian Tribal Organizations) found in this solicitation.

B. This solicitation is broken down into 12 Regions and 43 zones. The breakout of Regions and Zones are as listed below. Customer groupings for each zone are also shown below.

Group 1 = DoD & other non-USDA School Customers
Group 2 = USDA School Customers
Group 3 = DoD Export

| REGIONS | ZONES | CUSTOMERS |
|---|---|---|
| Calif. Plus | N. CA, NW NV, Pacific Expt | Group 1, Group 2 & Group 3 |
| | LA | DoD & USDA School grouped together |
| | SD | DoD & USDA School grouped together |
| | AZ | Group 1 & Group 2 |
| | So NV & Parts of Utah | Group 1 & Group 2 |
| Southeast | Al & FL Panhandle | Group 1 & Group 2 |
| | GA | Group 1 & Group 2 |
| | FL North | Group 1 & Group 2 |
| | FL Central | Group 1 & Group 2 |
| | FL South | Group 1 & Group 2 |
| | Puerto Rico | DoD & USDA School grouped together |
| Southern | Arkansas | Group 1 & Group 2 |
| | Louisiana | Group 1 & Group 2 |
| | Mississippi | Group 1 & Group 2 |
| Northwest | Seattle | Group 1 & Group 2 |
| | Spokane, Idaho | Group 1 & Group 2 |
| | Oregon | DoD & USDA School grouped together |
| | Alaska | Group 1 & Group 2 |
| Denver | Colorado,W. SD, E Wyoming | Group 1 & Group 2 |
| | Utah | Group 1 & Group 2 |
| | Montana, N. WY, W ND, SD | Group 1 & Group 2 |
| Texas | Dallas/ Ft. Worth | Group 1 & Group 2 |
| | El Paso | Group 1 & Group 2 |
| | Houston | Group 1 & Group 2 |
| | San Antonio | Group 1 & Group 2 |
| New England | CT, MASS,ME, NH, RI, Vt | Group 1 & Group 2 |
| | Upper NY | Group 1 & Group 2 |
| Central | Missouri | Group 1 & Group 2 |

EXHIBIT 2

| | | |
|---|---|---|
| | KY, OH, IND | Group 1 & Group 2 |
| | Tennessee | Group 1 & Group 2 |
| South Central | NM, COL | Group 1 & Group 2 |
| | OK, TX Panhandle | Group 1 & Group 2 |
| | NE & Kansas | Group 1 & Group 2 |
| Great Lakes | Illinois | Group 1 & Group 2 |
| | MICH & Part of Ohio | DoD & USDA School grouped together |
| | Pt Ohio, W. Pa., WV | DoD & USDA School grouped together |
| Mid West | Wisconsin | DoD & USDA School grouped together |
| | Minnesota, E SD | DoD & USDA School grouped together |
| | Iowa | DoD & USDA School grouped together |
| | ND | |
| Mid Atlantic | NY, NJ, Pa | DoD & USDA School grouped together |
| | MD, N Va., DC, DEL, Pt of WV | Group 1 & Group 2 |

The Government intends to make one (1) award per zone, but reserves the right to award more than one (1) contract per zone. Such awards are not "Multiple Awards" as defined by FAR 16.505 and DFARS 216.505-70. Offerors are required to offer on all items in the market basket for a zone, failure to do so may result in exclusion from award consideration.

C. This solicitation is set-aside 100% for small business. Each zone within the solicitation is covered by the set-aside. The Government reserves the right to dissolve the set-aside for any zone or for the entire solicitation via an amendment. The U.S. Small Business Administration has issued a waiver of the Non-manufacturer Rule thereby allowing small business receiving the award under a small business set-aside to procure products from large businesses.

D. The resulting contracts made against solicitation SPM300-06-R-0008 will be Indefinite Quantity Contracts (IQC) with an Economic Price Adjustment based on cost of materials. An IQC will provide for an indefinite quantity, within stated limits, of specific supplies or services to be furnished during a fixed period, with deliveries to be scheduled by placing orders with the contractor (FAR 16.504(a)). These contracts will be for an 18-month base term and contain provisions for three (3) 18-month option periods. The length of the contracts, including options, may total 72 months (6 years).

II. **ESTIMATED DOLLAR VALUE/GUARANTEED MINIMUM/MAXIMUM**

A. The following chart includes the 18-month estimated dollar value along with the guaranteed 20% minimum, 150% maximum and in the event of emergencies and/or mobilization the 200% alternate higher ceiling maximum. These estimates and guaranteed amounts apply to option periods as well.

| ZONES | 18 MO EST | 20% MIN | 150% MAX | 200% ALT |
|---|---|---|---|---|
| N. CA, NW NV, Pacific Expt | $11,300,000 | $2,260,000 | $16,950,000 | $22,600,000 |
| LA | $7,500,000 | $1,500,000 | $11,250,000 | $15,000,000 |
| SD | $13,100,000 | $2,620,000 | $19,650,000 | $26,200,000 |
| AZ | $3,100,000 | $620,000 | $4,650,000 | $6,200,000 |
| So NV & Parts of Utah | $1,400,000 | $280,000 | $2,100,000 | $2,800,000 |
| Al & FL Panhandle | $7,000,000 | $1,400,000 | $10,500,000 | $14,000,000 |
| GA | $7,300,000 | $1,460,000 | $10,950,000 | $14,600,000 |

EXHIBIT 3

| | | | | |
|---|---|---|---|---|
| FL North | $2,000,000 | $400,000 | $3,000,000 | $4,000,000 |
| FL Central | $3,700,000 | $740,000 | $5,550,000 | $7,400,000 |
| FL South | $7,000,000 | $1,400,000 | $10,500,000 | $14,000,000 |
| Puerto Rico | $8,900,000 | $1,780,000 | $13,350,000 | $17,800,000 |
| Arkansas | $800,000 | $160,000 | $1,400,000 | $1,600,000 |
| Louisiana | $3,500,000 | $700,000 | $5,250,000 | $7,000,000 |
| Mississippi | $2,700,000 | $540,000 | $4,050,000 | $5,400,000 |
| Seattle | $5,100,000 | $1,020,000 | $7,650,000 | $10,200,000 |
| Spokane, Idaho | $1,400,000 | $280,000 | $2,100,000 | $2,800,000 |
| Oregon | $1,000,000 | $200,000 | $1,500,000 | $2,000,000 |
| Alaska | $1,600,000 | $320,000 | $2,400,000 | $3,200,000 |
| Colorado,W. SD, E Wyoming | $6,100,000 | $1,220,000 | $8,150,000 | $12,200,000 |
| Utah | $1,200,000 | $240,000 | $1,800,000 | $2,400,000 |
| Montana, N. WY, W ND, SD | $900,000 | $180,000 | $1,350,000 | $1,800,000 |
| Dallas/ Ft. Worth | $3,200,000 | $640,000 | $4,800,000 | $6,400,000 |
| El Paso | $2,500,000 | $500,000 | $3,750,000 | $5,000,000 |
| Houston | $1,900,000 | $380,000 | $2,850,000 | $3,800,000 |
| San Antonio | $9,800,000 | $1,960,000 | $14,700,000 | $19,600,000 |
| CT, MASS,ME, NH, RI, Vt | $2,100,000 | $420,000 | $3,150,000 | $4,200,000 |
| Upper NY | $1,100,000 | $220,000 | $1,650,000 | $2,200,000 |
| Missouri | $3,500,000 | $700,000 | $5,250,000 | $7,000,000 |
| KY, OH, IND | $5,300,000 | $1,060,000 | $7,950,000 | $10,800,000 |
| Tennessee | $2,400,000 | $480,000 | $3,600,000 | $4,800,000 |
| NM, COL | $1,400,000 | $280,000 | $2,100,000 | $2,800,000 |
| OK, TX Panhandle | $4,600,000 | $920,000 | $6,900,000 | $9,200,000 |
| NE & Kansas | $1,400,000 | $280,000 | $2,100,000 | $2,800,000 |
| Illinois | $4,000,000 | $800,000 | $6,000,000 | $8,000,000 |
| MICH & Part of Ohio | $3,300,000 | $660,000 | $4,950,000 | $6,600,000 |
| Pt Ohio, W. Pa., WV | $3,000,000 | $600,000 | $4,500,000 | $6,000,000 |
| Wisconsin | $1,200,000 | $240,000 | $1,800,000 | $2,400,000 |
| Minnesota, E SD | $1,800,000 | $360,000 | $2,700,000 | $3,600,000 |
| Iowa | $1,000,000 | $200,000 | $1,500,000 | $2,000,000 |
| ND | $400,000 | $80,000 | $600,000 | $800,000 |
| NY, NJ, Pa | $10,700,000 | $2,140,000 | $16,050,000 | $21,400,000 |
| MD, N Va., DC, DEL, Pt of WV. | $5,400,000 | $1,080,000 | $8,100,000 | $10,800,000 |

## III. EFFECTIVE PERIOD OF CONTRACT – INDEFINITE QUANTITY CONTRACT

Each resultant contract will be for an 18-month base period commencing with the 1st order placed under the contract. Each contract will contain three (3) 18-month options. The Government anticipates ordering to commence 30-60 days after each contract award.

## IV. OPTIONS

XII. **PACKAGING, PACKING, LABELING AND MARKINGS**

A. All packaging and packing shall be in accordance with good commercial practice. Labeling shall be in accordance with commercial labeling complying with the Federal Food, Drug and Cosmetic Act and regulations promulgated thereunder. Shipping containers shall be in compliance with the National Motor Freight Classification and Uniform Freight Classification Code.

B. To ensure that the carrier and the receiving activity properly handle and store items, standard commercial precautionary markings such as "KEEP REFRIGERATED" shall be used on all cases when appropriate.

XIII. **DELIVERY INSTRUCTIONS**

A. Vendors shall ensure all products are delivered in sanitary trucks that are of a commercially acceptable standard. All trucks shall maintain proper temperatures, as determined through standard commercial practices.

B. Deliveries shall be F.O.B. destination to all ordering activities and delivery points. All items will be delivered to customer locations, free of damage, with all packaging and packing intact. The contractor shall remove all excess pallets used for delivery from the delivery point. A listing of all the delivery points per zone can be found at: http://www.dscp.dla.mil/subs/produce/pv/region.htm

C. Troop installation & USDA delivery schedules (days and times) routes and stop-off sequence will be coordinated and verified with the customers on a post award basis by the awardee(s). In general, each Troop customer receives three (3) deliveries per week and each USDA customer receives one (1) delivery per week.

D. Products for individual customers/dining facilities must be segregated. Many of the military bases have more than one delivery point. All product shall be segregated by drop-off point and loaded into the delivery vehicle in reverse drop sequence. The intent is to provide expeditious off-loading and delivery to the customer.

E. The offeror shall also ensure that the personnel loading and delivering the product provide prompt and efficient service to the customer.

XIV. **INSPECTION AND ACCEPTANCE**

A. Inspection and Acceptance of products will be performed at destination. The inspection is normally limited to identity, count and condition; however, this may be expanded if deemed necessary by either the military Veterinary Inspector, Dining Facility Manager, Food Service Advisor/Officer, or the Contracting Officer. Delivery vehicles may be required to stop at a central location for inspection before proceeding to the assigned delivery point(s). In addition, the delivery vehicles will be inspected for cleanliness and condition. Supplies transported in vehicles that are not sanitary, or which are not equipped to maintain prescribed temperatures, may be rejected without further inspection.

B. The authorized receiving official at each delivery point is responsible for inspecting and accepting products as they are delivered. The delivery ticket shall not be signed prior to the inspection of each product. All overages/shortages/returns are to be noted on the delivery ticket by the receiving official and truck driver. The authorized receiving official's signature on the delivery ticket denotes acceptance of the product.

EXHIBIT 4

C. The contractor shall forward three (3) copies of the delivery ticket with the shipment. The receiving official will use the delivery ticket as the receipt document. Two (2) copies of the signed and annotated delivery ticket will serve as the acceptance document. No electronic invoice may be submitted for payment until acceptance is verified. Additionally, upon completing the delivery (or deliveries ) and before the carrier leaves the installation, copies of the invoices may be required to be delivered to a central "Accounting/Troop issue" activity on the installation.

XV. **AUTHORIZED RETURNS**

The contractor/vendor shall accept returns under the following conditions:

1. Products shipped in error
2. Products damaged in shipment
3. Products with concealed or latent damage
4. Products that are recalled
5. Products that do not meet shelf life requirements
6. Products that do not meet the minimum quality requirements as defined for the items listed in the schedule
7. Products delivered in unsanitary delivery vehicles
8. Products delivered that fail to meet the minimum/maximum specified temperature
9. Quantity excess as a result of order input error and/or purchase ratio factor error
10. Any other condition not specified above that is deemed by the customer to be valid reasons for return.

XVI. **REJECTION/RETURN PROCEDURES**

A. **In the event an item is returned, the delivery ticket/invoice shall be annotated as to the item (s) rejected. These items shall then be deducted from the delivery ticket/invoice. The invoice total must be adjusted to reflect the correct dollar value of the shipment.** Replacements will be authorized based on the customer's needs. On an as-needed basis, same day re-delivery of items that were previously rejected shall be made, so that the customer's food service requirements do not go unfulfilled for that day. The re-delivered items will be delivered under a separate invoice utilizing the same call number, clin number, and purchase order number for the discrepant line. These re-deliveries will not constitute an emergency order requirement.

B. In the event a product is rejected after initial delivery is made, the vendor will pick up the rejected product. Credit due to the ordering activity as a result of the rejected product being returned, will be handled through a receipts adjustment process in STORES. If the vendor has already been paid for the product, a claim will be issued through DSCP's financial system. In all cases, one (1) copy of the credit memo is to be given to the customer and (1) copy of the credit memo is to be sent to the DSCP Contracting Officer .

1. If a customer requires a one-to-one replacement, no additional paper work is necessary. The vendor delivery ticket/invoice will show that product is a replacement for rejected item. The invoice shall reference the call number, CLIN number, and Purchase Order Number of the originally ordered product.

C. It is a requirement of this solicitation that product shall be inspected upon receipt as promptly as practicable. However, failure to promptly inspect or accept supplies shall not relieve the contractor from responsibility, nor impose liability on any of the customers, for nonconforming supplies. See clause 52.212-4, paragraph (o) and addendum to clause 52.212-4, paragraph 4, subparagraph(2)

utilizing STORES. USDA School Lunch customers will order via a separate DSCP developed web-based ordering tool.

A. Subsistence Total Order and Receipt Electronic System (STORES)

1. STORES is the Government's translator/ordering system that is capable of accepting orders from any of the Services; i.e. Army, Air Force, Navy, or Marines, individual ordering systems and translating them into an Electronic Data Interchange (EDI) format. In addition, this information is passed to DSCP for the purposes of contractor payment and customer billing.

2. The offeror shall be required to interface with STORES and must be able to support the following EDI transaction at least one week prior to order commencement:

810 Electronic Invoice
820 Payment Voucher Information
832 Catalog (Outbound - Vendor to DSCP)
850 Purchase Order
861 Receipt
Functional Acknowledgment

A complete description of these transaction sets is included in the "EDI Implementation Guidelines" can be found at http://www.dscp.dla.mil/subs/produce/pv/index.htm. The vendor shall have access to the Internet and be able to send and receive electronic mail (email).

B. Unit prices must be formatted not more than two (2) places to the right of the decimal point in all ordering catalogs.

C. Vendors are required to utilize the Government's item descriptions on all electronic ordering catalogs as well as on its invoices, delivery ticket to customer and 810 invoice transaction set.

X. ORDER PLACEMENT

A. Customers shall place their orders to accommodate at a minimum a "skip day" delivery. An order placed on 1 September would have a required delivery date of 3 September. Orders may be placed with a longer lead-time; however, the minimum lead-time is "skip day." Minimum order requirement for any resultant contract is $50.00. The $50.00 minimum does not apply to any emergency orders.

B. All invoice pricing will be based upon the unit price at time of order. For example, for any item ordered on a Friday to be delivered the following week, pricing will based upon the Friday price, regardless of whether the unit price for that item changed as part of the weekly catalog update.

XI. ITEM AVAILABILITY

A. Vendors must have access to items in sufficient quantities to fill all ordering activity requirements. It is critical that items ordered be routinely delivered on a "skip day" basis, at a minimum.

B. Vendors shall notify the customer within 24 hours of order placement of the non-availability of any item. Vendors shall offer the customer a substitute of equal or higher quality and at an equal or lower cost, or advise them of the not-in-stock position of the item. Substituted product shall not be delivered without prior consent by the customer. Substituted items must be noted as such on the invoice.

EXHIBIT
5

## XII. PACKAGING, PACKING, LABELING AND MARKINGS

A. All packaging and packing shall be in accordance with good commercial practice. Labeling shall be in accordance with commercial labeling complying with the Federal Food, Drug and Cosmetic Act and regulations promulgated thereunder. Shipping containers shall be in compliance with the National Motor Freight Classification and Uniform Freight Classification Code.

B. To ensure that the carrier and the receiving activity properly handle and store items, standard commercial precautionary markings such as "KEEP REFRIGERATED" shall be used on all cases when appropriate.

## XIII. DELIVERY INSTRUCTIONS

A. Vendors shall ensure all products are delivered in sanitary trucks that are of a commercially acceptable standard. All trucks shall maintain proper temperatures, as determined through standard commercial practices.

B. Deliveries shall be F.O.B. destination to all ordering activities and delivery points. All items will be delivered to customer locations, free of damage, with all packaging and packing intact. The contractor shall remove all excess pallets used for delivery from the delivery point. A listing of all the delivery points per zone can be found at: http://www.dscp.dla.mil/subs/produce/pv/region.htm

C. Troop installation & USDA delivery schedules (days and times) routes and stop-off sequence will be coordinated and verified with the customers on a post award basis by the awardee(s). In general, each Troop customer receives three (3) deliveries per week and each USDA customer receives one (1) delivery per week.

D. Products for individual customers/dining facilities must be segregated. Many of the military bases have more than one delivery point. All product shall be segregated by drop-off point and loaded into the delivery vehicle in reverse drop sequence. The intent is to provide expeditious off-loading and delivery to the customer.

E. The offeror shall also ensure that the personnel loading and delivering the product provide prompt and efficient service to the customer.

## XIV. INSPECTION AND ACCEPTANCE

A. Inspection and Acceptance of products will be performed at destination. The inspection is normally limited to identity, count and condition; however, this may be expanded if deemed necessary by either the military Veterinary Inspector, Dining Facility Manager, Food Service Advisor/Officer, or the Contracting Officer. Delivery vehicles may be required to stop at a central location for inspection before proceeding to the assigned delivery point(s). In addition, the delivery vehicles will be inspected for cleanliness and condition. Supplies transported in vehicles that are not sanitary, or which are not equipped to maintain prescribed temperatures, may be rejected without further inspection.

B. The authorized receiving official at each delivery point is responsible for inspecting and accepting products as they are delivered. The delivery ticket shall not be signed prior to the inspection of each product. All overages/shortages/returns are to be noted on the delivery ticket by the receiving official and truck driver. The authorized receiving official's signature on the delivery ticket denotes acceptance of the product.

2. The usage of First-In, First-Out (FIFO) principles;
2. Product shelf life is monitored;
3. Items are free of damage;
4. Correct items and quantities are selected and delivered;
5. Ensure requirements of the Berry Amendment are met;
6. Customer satisfaction is monitored;
7. Product discrepancies and complaints are resolved and corrective action is initiated;
8. Supplier, FDA, or DoD initiated food recalls are promptly reported to customers and DSCP;
9. Compliance with EPA and OSHA requirements;
10. Salvaged items or products shall not be used;
11. Applicable food products delivered originate from a source listed as a Sanitarily Approved Food Establishment for Armed Forces Procurement.

XXIV. **WAREHOUSING AND SANITATION PROGRAM/STORED PRODUCT PEST MANAGEMENT**

The contractor shall develop and maintain a sanitation program and a stored product pest management program for food and other co-located non-food items that comply with industry standard programs such as the Code of Federal Regulations, Title 21, part 110, Food Manufacturing Practices, the Federal Insecticide, Fungicide and Rodenticide Act, the Food, Drug, and Cosmetic Act of 1938 as well as all pertinent state and local laws and regulations. Records of inspections performed by the firm, subcontractor, or recognized industry association shall be maintained and made available to the Government at the Contracting Officer's request. Any findings by the firm or its agent documenting a critical sanitation deficiency shall be reported immediately to the Contracting Officer with an attached report of corrective action.

XXV. **PRODUCT SANITARILY APPROVED SOURCE REQUIREMENTS**

Applicable food products, including pre-cut and packaged vegetables and salads, mushrooms and sprouts, delivered to customers listed in this solicitation, as well as any customer added at a later date, shall originate either from an establishment listed in the "Directory of Sanitarily Approved Food Establishments For Armed Forces Procurements", or one which has been inspected under the guidance of the United States Department of Agriculture (USDA). For detailed information see Clause 52.246-9P31 "Sanitary Conditions" in this solicitation.

A copy of the list of applicable items is attached. It may also be found at http://vets.amedd.army.mil/vetcom/directory.htm

XXVI. **CONTRACTOR QUALITY AUDITS**

The Government reserves the right to conduct formalized audits to verify the vendor's adherence to the contract requirements and the quality of product being supplied under any resultant contract. Contractors shall be responsible for providing a location of the quality audit and the cost of product, up to $1000.00 per audit. The Government anticipates conducting audits on an annual basis, but reserves the right to conduct more than one audit annually should conditions warrant.

XXVII. **RECALL PROCEDURES REQUIREMENTS**

In the event that a product recall is initiated by the USDA, vendor, supplier or manufacturer, the vendor should follow the procedures as outlined below:

(1) Immediately notify the following personnel:
(i) Customers that have received the recall product
(ii) DSCP Contracting Officer
(iii) DSCP Account Manager
(iv) DSCP Consumer Safety Officer at 215-737-3845

EXHIBIT
6

(2) Provide the following information to the DSCP Consumer Safety Officer:
(i) Reason for recall
(ii) Level of recall, i.e., Type I, II or III
(iii) Description of product
(iv) Amount of product
(v) List of customers that have received product
(vi) Name and phone number of responsible person (Recall Coordinator)

(3) The vendor should provide a Final Status Report of Recall, when completed, to the DSCP Consumer Safety Officer.

(4) At the discretion of the affected customers, the vendor shall either replace at no additional cost or adjust the invoice quantity for any recalled product. Delivery of replacement product shall occur at the discretion of the customer.

XXVIII. **PERISHABLE AGRICULTURAL COMMODITIES ACT (PACA) LICENSE**
All offerors must possess and maintain a valid PACA license throughout the life of contract. Failure to possess a valid PACA license at the time of offer submission will make offeror ineligible for award. Failure to maintain a valid PACA license after award may result in termination of contract or non-renewal of an option.

XXIX. **NON-COMPETE PROVISION**
The offeror warrants that it will not actively promote, encourage, or market any of the customers on this acquisition away from a resultant DSCP contract and onto a contract of any other Government agency or commercial entity. This prohibition applies both on a pre-award and post-award basis. The Contracting Officer reserves the right not to exercise the option and to resolicit the requirement should the vendor violate this provision.

XXX. **FORCE PROTECTION**

DSCP Subsistence Directorate provides world-wide subsistence logistics support during peace time as well as during regional conflicts, contingency operations, national emergencies, and natural disasters. At any time, the United States Government, its personnel, resources and interests may be the target of enemy aggression to include espionage, sabotage, or terrorism. This increased risk requires DSCP to take steps to ensure measures are taken to prevent the deliberate tampering and contamination of subsistence items. The offeror must ensure that products and/or packaging have not been tampered with or contaminated throughout the growing, storage, and delivery process. The offeror must immediately inform DSCP Subsistence of any attempt or suspected attempt by any party or parties, known or unknown, to tamper with or contaminate subsistence supplies.

As the holder of a contract with the Department of Defense, the awardees should be aware of the vital role they play in supporting our customers. It is incumbent upon the awardees to take all necessary actions to secure product delivered to all military customers, as well as any applicable commercial destinations.

XXXI. **SURGE/MOBILIZATION**

1. *Surge*: The capability to handle a large increase in case volume for short periods of time with very little lead-time may be required at various times throughout the term of the contract. Services may experience unscheduled arrival of troops, with only a few hours notice, as part of normal operations, where the order requirements could more than double from their normal usage on a given days notice. The timing of these types of surges will be impossible to anticipate. Pricing for items furnished in this fashion shall be the same as those for routine,

EXHIBIT
7

non-surge orders.

2. *Mobilization:* Offeror must be capable of support a tripling of ordering requirements for an extended period of time in the event of a full-scale military mobilization or national emergency. As with surge support, pricing for items furnished in this fashion shall be the same as those for routine, non-mobilization orders.

3. When units deploy for training exercises outside their zone, their current vendor will be given the opportunity to supply the unit's requirements. If the current vendor cannot perform this function at no additional cost, or the Vendor does not wish to accept the mission, the requirements will be turned over to the vendor supporting the zone in which training will occur.

## XXXII. MANAGEMENT REPORTS

A. The contractor shall create and electronically transmit the following reports to the DSCP Contracting Officer and Account Manager on a monthly basis. All reports shall be cumulative for a one (1) month period and submitted no later than the seventh day of the following month (e.g., reporting period of January 1 through January 31, the reports must be received by February 7).

1. *Descending Dollar Value Report* - Sorted by line item; each line to contain at a minimum: DSCP stock number, item Description, pack or size, brand description, quantity, and total dollar value of units shipped. Dollar amounts will be totaled. This report shall be submitted by individual customer accounts AND also by the total customer base in each zone.

2. *Product Line Grower/Supplier Listing* - this report shall list all items purchased along with quantity and dollar value. It shall be sorted by Grower/Supplier and annotate whether the grower/supplier is a large business or small business and whether the grower/supplier is local or non-local.

3. *Fill Rate Report* - the fill-rate is calculated by dividing the number of cases and bins accepted by the customer by the number of cases and bins ordered. No other method of calculating fill rates should be included. Mis-picks and damaged cases should not be included in this calculation. This report should reflect the fill-rates with and without substitutions. The report should specify fill rates per customer and an overall average fill-rate for all customers under the contract for the month being reported.

4. *Customer Service Report* - The contractor shall develop and provide a report summarizing all discrepancies, complaints and all positive feedback from ordering activities and the respective resolutions by providing a summary from customer visits.

5. *Rebate Reports* - All rebates that have been passed along to the customer via off-price reductions, or that are due to the customers, shall be summarized by listing each customer and the rebate amount. Also include the grower/supplier offering the rebate and the product usage. The total should be per customer and per contract.

6. *Financial Status Report* - In order to ensure timely payments, an accounts receivable and/or a "days of outstanding sales" shall be submitted on a monthly basis, at a minimum. Many vendors elect to submit this report, in the form of a spreadsheet, on a weekly basis. The report should contain information on: customer, invoice number, call number, invoice amount, amount paid, credit adjustments, debit adjustments and balance due. It is suggested that this report contain as much information as possible to alleviate problems immediately.

## XXXIII. CENTRAL CONTRACTS

MAR-12-2008 12:42 DSCP P 215 737 2620 P.01/01

DEFENSE LOGISTICS AGENCY
DEFENSE SUPPLY CENTER PHILADELPHIA
700 ROBBINS AVENUE
PHILADELPHIA, PENNSYLVANIA 19111-5092

IN REPLY REFER TO
DSCP-FTP/215-737-3311

12 March 2008

Hardies Fruit & Vegetable Co., Inc.
Mr. William Barnes
1005 North Cockrell Hill Road
Dallas, Texas 75211
Phone: 214-217-4144
FAX: 214-615-0112

Mr. Barnes,

In accordance with FAR 15.503(a)(2) The Defense Supply Center Philadelphia (DSCP) is informing your firm of the government's intent to award the San Antonio Zone under solicitation SPM300-06-R-0008.

NAME AND ADDRESS OF SUCCESSFUL OFFEROR

M&S Foods, Ltd., Co.
13728 SW 1st Lane
Newberry, FL 32669

The Government will not consider subsequent revisions of your proposal/offer and no response to this notice is required unless a basis exists to challenge the small business size status of the apparent successful offeror. After contract award, a second letter will be sent to your firm in accordance with FAR 15.503 (b).

Your interest in this acquisition is appreciated and we hope you will continue participating in future requirements.

Sincerely,

Frank Holder

FRANK HOLDER
Contracting Officer

EXHIBIT
8

TOTAL P.01

**U. S. Small Business Administration**
Office of Government Contracting—Area III
233 Peachtree St. N.E., Suite 1805
Atlanta, Georgia 30303-1508
Phone (404) 331-7587 Fax (404) 331-2956

**VIA FACSIMILE: (352) 331-8958**

April 17, 2008

Mr. Tyrone C. Walker, President
M&S Foods Ltd. Co.
13728 SW 1st Lane
Newberry, FL 32669-3015

Subject: Size Determination Case #3-2008- 37
Protested Requirement: SPM300-06-R-0008
NAICS Code: 424480
Size Standard: 500 employees

Dear Mr. Walker:

The Small Business Administration (SBA) has made a formal size determination that your firm is other than small for the captioned solicitation. Enclosed is a copy of that determination.

Section 16(d) of the Small Business Act, 15 USC 645(d), provides severe criminal penalties for knowingly misrepresenting the small business size status of a concern in connection with procurement programs. Under 13 C.F.R. Part 121.1009 (g) (3), a concern determined to be other than small for a particular size standard is ineligible for any procurement or assistance requiring the same or lower size standard, and may no longer self-certify as small under such size standard unless recertified as small by SBA pursuant to Part 121.1010. If the concern has already certified itself as small on a pending procurement or on another assistance application, the concern must immediately inform the officials responsible for the pending procurement or other requested assistance of the adverse size determination. This provision may not apply if the adverse decision specifically states that the negative determination is contract-specific, and applies only to one particular requirement.

EXHIBIT
1

Any person adversely affected by this decision may appeal to SBA's Office of Hearings and Appeals (OHA). The appeal petition must be filed with OHA at the following address:

Office of Hearings and Appeals
Small Business Administration
409 3rd Street, S.W.
Washington, DC 20416

The appeal petition must include the following information: the Area Office which issued the size determination; the solicitation or contract number; name, address and telephone number of the contracting officer; the date of receipt of the size determination; a full and specific statement as to why the size determination is alleged to be in error, together with argument supporting such allegations; and the name, address, telephone number and signature of the appellant or its attorney. 13 CFR sec. 134.305(a).

All filings must be by personal delivery, express mail, facsimile transmission, or commercial delivery service. If filing or service is made by facsimile transmission, the date of service or filing is the date of transmission. If filing or service is made by personal delivery, express mail, or commercial delivery service, the date of service or filing is the date of receipt. 13 CFR sec. 134.204(e). Each party is responsible for the service of its pleadings and other submissions. Unless otherwise ordered by the OHA Judge, service is made by providing each party, or its attorney, with a copy of the appeal petition by personal delivery, express mail, facsimile transmission, or commercial delivery service. 13 CFR sec. 134.204(a).

The appeal petition must be served upon the following: the SBA official who issued the size determination; the contracting officer responsible for the procurement affected by the size determination; the business concern whose size status is at issue; all persons who filed protests; and SBA's Office of General Counsel. 13 CFR sec. 134.305(b).

(1) If the appeal is from a size determination in a pending procurement, the appeal petition must be served and filed within 15 days after the date of receipt of the size determination. (2) If the appeal is from a size determination other than one in a pending procurement, the appeal petition must be served and filed within 30 days after the date of receipt of the size determination. 13 CFR sec. 134.304.

The appellant must attach to the appeal petition a signed certificate identifying each person or governmental agency which was served with the notice of appeal, and how and when each of those persons or governmental agencies was served. The SBA size regulations are available over the

Internet under Title 13, Part 121 (Size Regulations) at http://www.access.gpo.gov/nara/cfr/waisidx_05/13cfr121_05.html, and Part 134 (Size Appeals Regulations) of the Code of Federal Regulations http://www.access.gpo.gov/nara/cfr/waisidx_05/13cfr134_05.html. Size appeals not meeting requirements set forth under Part 134 may be dismissed.

If additional information or assistance is needed, please contact Ivette Mesa Bascumbe at (404) 331-7587 X 209. Further guidance and information on the Size Program may be obtained by contacting our Size Home Page website at http://www.sba.gov/size.

Sincerely,

Ivette Mesa Bascumbe
General Business & Industry Specialist

CC: VIA FACSIMILE: (215) 737-7166: Frank G. Holder, Contracting Officer, Defense Supply Center Philadelphia, Philadelphia, Pennsylvania; Genevieve Venturo, Small Business (215) 737-7116.

Piliero Mazza, Attorney at Law (202) 857-0200; Pamela J. Mazza

Protestor, William Barnes, Hardie's Fruit & Vegetable Co., Inc. (212) 615-0122; Bailey & Bailey, P.C., Attorney at Law (210) 225-6246; Johnathan M. Bailey

# SIZE DETERMINATION MEMORANDUM
# FILE NUMBER 3-2008-37

**PROTESTED CONCERN:** M&S Foods Ltd. Co. ("MS") Newberry, FL

**PROCUREMENT:** SPM300-06-R-0008 (Fresh Fruits and Vegetables support for DOD & Non DOD activities)

**NAICS CODE:** 424480

**SIZE STANDARD:** 500 employees

**INTRODUCTION:** On March 20, 2008, the Atlanta Area III SBA Government Contracting office received a request for size determination from the Defense Logistics agency, Defense Supply Center Philadelphia (DSCP), Associate Director of Small Business, Michael McCall and Genevieve Venturo (Small Business Specialist), point of contact. An unsuccessful offeror, Hardies Fruit & Vegetable Co., Inc. (H), filed a protest alleging that MS was not a small business concern because it was unduly reliant on its proposed subcontractor, Fresh Point-City Produce, LP (City), a subsidiary of Fresh Point, Inc., which is owned by Sysco Corporation. The protest alleges that MS was nonresponsive because MS does not own a warehouse or other produce storage facilities in the State of Texas. "MS does not own any distribution facilities or vehicles in the State of Texas. MS must rely entirely upon the supply and distribution capabilities of a subcontractor to perform this contract, as it only has at most the ability to process orders and billing with its own resources". MS must rely on City, a large company to perform the weekly requirements dictated by this solicitation and therefore does not qualify as a small business.

The protest was received within five business days after the protestor received notification of the successful offeror and as a result the protest was timely.

**RESPONSE:** In response to the protest allegations, MS submitted SBA Form 355, Application for Small Business Size Determination, and other information. According to Form 355, MS is 100% owned by Tyrone C. Walker, President. There are 7 employees.

**Protest Issues**

The issues that H raised in its protest that may be reviewed by SBA in a size determination proceeding are whether MS will perform the primary and vital requirements of the contract, and whether MS is unusually reliant on City for contract performance.

Analysis under Ostensible Subcontractor Rule

The issues in this case are whether MS's subcontractor, City, will perform the primary and vital requirements of this contract and whether MS is unusually reliant on City. If either of these conditions exists, the prime and its subcontractor should be treated as joint venturers, and therefore affiliates for size determination purposes.

In the teaming agreement dated September 8, 2006, reference is made to a company called City, located at 10300 Springdale Road, Austin, Texas 78249. The teaming agreement is signed by Steven Scruggs for City and Ty Walker for MS.

13 CFR § 121.103(h) (4) How does SBA determine affiliation?

A contractor and its ostensible subcontractor are treated as joint venturers, and therefore affiliates, for size determination purposes. An ostensible subcontractor is a subcontractor that performs primary and vital requirements of a contract, or of an order under a multiple award schedule contract, or a subcontractor upon which the prime contractor is unusually reliant. All aspects of the relationship between the prime and subcontractor are considered, including, but not limited to, the terms of the proposal (such as contract management, technical responsibilities, and the percentage of subcontracted work), agreements between the prime and subcontractor (such as bonding assistance or the teaming agreement), and whether the subcontractor is the incumbent contractor and is ineligible to submit a proposal because it exceeds the applicable size standard for that solicitation.

The purpose of the rule is to prevent other than small businesses from forming relationships with small firms to evade SBA's size requirements. The ostensible subcontractor rule permits the SBA to determine that a subcontractor and a prime contractor have effectively formed a joint venture (and thus are affiliates) for determining size.

A prime contractor may subcontract a portion of the work without being regarded as a joint venture with its subcontractor, provided certain standards are met. MS addressed the seven factors test to address the issues of City being an ostensible contractor. In *Size Appeal of D.P. Associates, Inc.*, SBA No. SIZ-2719 (1987) and *Size Appeal of Ideal Services*, SBA No. SIZ-3317 (1990) the seven factor test was used to evaluate unusual reliance.

1. Who will manage the contract: MS stated that they are performing 100 percent of the wholesaler work. The MS buying specialist is tasked with determining the lowest prices and then instructs City to deliver the appropriate quantities.

2. Which party possesses the requisite background and expertise necessary to carry out the contract: MS has five years of experience of providing perishable and non perishable goods with produce supply chain broker services and ensuring 99% deliveries were on time.

3. Which party pursued the contract: MS stated that they are registered to receive notices through Fed Biz Opps. MS attended several DSCP informational meetings and learned about the intent to award weekly, monthly and quarterly produce supply contracts.

4. What degree of collaboration was there in preparation and submission of the competitive proposal: MS stated they prepared the solicitation response, including product prices, fees and total unit prices. City has little to no input in the process. The teaming agreement submitted for this solicitation states that MS will be handling the day to day management of this solicitation. Fresh Point/Sysco Corporation agreed to the delivery and warehousing of the product. MS shall retain primary control and responsibility for prime contract proposal, subject to review and approval by City. In Section 2 of the Teaming Agreement it states, "City shall have the right to assist in and to review and approve the activities undertaken by MS".

5. Are there discrete tasks to be performed by each of the teaming partners or is there commingling of personnel and resource: MS stated that the teaming agreement proposed is a specific plan for the performance of the contract. The documentation provided shows City will procure and deliver perishable products. DSCP is also a customer of City. In a letter submitted with the proposal it states in bold print that, "MS will utilize Sysco as its supplier/shipper. MS is responsible for all accounts payables and receivables incurred in this solicitation."

6. What is the amount of work to be performed by each party: MS stated that customer service and support functions is available 40 hours per week by a trained customer service personnel who interfaces continuously with the procuring agency to ensure prompt and complete delivery while handling customer complaints and concerns.

7. Which party will perform the more complex and costly contract functions: MS is responsible for all accounts payable and receivable for products shipped under this contract.

In *Size Appeal of the Analysis Group*, SBA No. SIZ-4814 (2006), SBA's Office of Hearings and Appeals stated:

> The 'seven factors test' is an earlier way of encapsulating what has become the ostensible subcontractor rule codified in 13 CFR § 121.103(h) (4). These seven factors are now almost twenty years old; they are neither exclusive nor exhaustive, nor do they address 'all aspects' of the prime contractor/subcontractor relationship required by 13 CFR § 121.103(h) (4). Instead, the Area Office must, at a

minimum, consider the aspects listed in 13 CFR § 121.103(h) (4) and should analyze factors outside of the seven factors if relevant. *See Size Appeal of FDR, Inc.*, SBA No. SIZ-4781 (2006); *Size Appeal of Taylor Consultants, Inc.*, SBA No. SIZ-4775 (2006). In their analyses, Area Offices may choose to concentrate on one factor if it is dominant or persuasive. See *Size Appeal of Ahuska Int'l Security Corp.*, SBA No. SIZ-4752 (2005). Therefore, while it is acceptable to consider the seven factors, the Area Office must evaluate 'all aspects' of the prime contractor/subcontractor relationship (or the totality of the circumstances) to determine if the ostensible subcontractor rule applies. See 13 CFR § 121.103(a) (5).

**DISCUSSION**: This procurement is a long term contract set aside for small business to provide a full line of fresh fruit and vegetable support for DOD and non DOD activities located throughout the United States. On March 20, 2008, the Area Office requested the NAICS code for this procurement since we could not find it on the solicitation. The Small Business Specialist for the procuring office responded "NAICS 424480, Fresh Fruit & Vegetable Merchant Wholesalers, with Nonmanufacturer size standard of 500 employees." At this time we requested the waiver of the Nonmanufacturer Rule since this NAICS code was not on the waiver list. A waiver of the Nonmanufacturer Rule was granted on March 16, 2006, from the Small Business Administration in Washington, D.C. The waiver was for the purchase to cover the full line of various fresh fruits and vegetables under the above mentioned contract. This seems to be the correct NAICS code for this procurement since this is the descriptor used in the first page of the solicitation (Full Line Fresh Fruit and Vegetable). Thus, a waiver allows a small business to buy from a large business. This waiver does not relinquish the Prime contractor from performing the primary and vital requirements with its own employees. The waiver does not prevent us from determining if the ostensible subcontractor rule applies. See 13 CFR § 121.103(h) (4).

The NAICS code 424480 states Fresh Fruit and Vegetable Merchant Wholesalers. According to the NAICS definition, this industry comprises establishments primarily engaged in the merchant wholesale distribution of fresh fruits and vegetables. According to Webster's Dictionary a wholesaler is defined as a business that sells in large quantities to other businesses. According to the dictionary, to distribute is to divide, deliver or give out the fruits and vegetables. The scope of work indicates that the contractor shall deliver the produce to the San Antonio area. In the Delivery Instructions of the solicitation Section XII, vendors shall ensure all products are delivered in sanitary trucks. Products for individual customers/dining facilities must be segregated. Many of the military bases have more than one delivery point. In general, each Troop customer

receives three deliveries per week and each USDA customer receives one delivery per week. In section XI, Item Availability, vendors must have access to items in sufficient quantities to fill all ordering activity requirements. Section XII, Packaging, Packing, Labeling and Markings, all packaging and packing shall be in accordance with good commercial practice. Section XIV, Inspection and Acceptance, will be performed at destination. The solicitation MS submitted under Place of Performance, offeror intends to use Fresh Point/City Produce at 5830 Rocky Point Drive in San Antonio, Texas. The solicitation clearly outlines the requirements as ordering from electronic catalogs, customer service, ordering system, order placement, item availability, packaging, packing, labeling and markings, delivery instructions, inspection and acceptance, rejection/return procedures, invoicing etc.

The Department of Health & Human Services inspected the City facilities in Texas and submitted a detail report on their findings. Specifically as defined in the work statement, the delivery and warehousing of the produce are the primary and vital requirements of this contract. MS states in the proposal that they are handling the day to day management of this solicitation. MS is responsible for all accounts payables and receivables incurred in this solicitation. However, without City, MS would not have the ability to provide the produce, meet the required deliveries, warehouse the produce, label, package and distribute the produce.

Documentation provided to SBA clearly states that the primary and vital requirements of the contract – the wholesale distribution of fruits and vegetables – will be performed by City, a company owned in part by Fresh Point, which is owned by Sysco, a large company (As stated by the Department of Health and Human Services, Establishment Inspection Report dated 2/27/2006 submitted as an attachment with MS proposal). The teaming agreement states that MS shall take the lead in negotiating... subject to review and approval by City. Further MS shall, as Primary Contractor, retain primary control over and responsibility for prime contractor performance, subject to review and approval by City. MS will submit a prime contract proposal and will be responsible for the final editing, printing and submittal of the necessary proposal documents to the government, all subject to review and approval by City. In the teaming agreement statement of work, the security fence surrounding City's facility is outlined, including but not limited to inspection at the dock door, refrigerated warehouse temperature sensors and any variation signals an alarm, and delivery vehicles are washed and the interior is pressured washed daily and pre-cooled prior to any loadings of products. MS clearly cannot perform any of the requirements of this procurement without City, the more complex and costly function of the contract.

Based on the totality of the circumstances, taking into consideration all of the above factors, it is determined that MS is unduly reliant on its subcontractor, City. The contractor is also relying heavily on the experience and background of the subcontractor, who is supplying and shipping the produce. In *Size Appeal of Crown Support Services, Inc.*, SBA No. SIZ-3294 (1990), one of the factors mentioned was the emphasis placed upon the subcontractor's background and skills.

Therefore, the combined number of employees exceeds the size standard of 500 for this procurement.

**CONCLUSION:** SBA finds that MS is unusually reliant on its subcontractor, City and City will perform the primary and vital requirements of the contract. MS is therefore found to be affiliated with City, Fresh Point and Sysco Corporation.

MS is found to be other than a small business for the referenced procurement with a size standard of 500 employees. This determination is effective immediately and remains in full force and effect unless and until reversed by the Office of Hearings and Appeals. Any person adversely affected by this decision has the right to file an appeal petition with SBA's Office of Hearings and Appeals (OHA).

This ruling does not prohibit MS from self-certifying as small on future procurements as this determination applies only to the procurement in question.

Mary E Harrison

Mitchell Morand
Area Director

Date Decided: 4/17/08



# M&S FOODS

**Innovative Food Distribution Systems and Marketing**

Home
How it Works
Buyers Group Application
Did You Know...?
FDJA Member Update
U.S.D.A. Recipes
Contact Us

**M & S Foods News**

*State of Florida selects M&S Foods as featured business.* Read More

*Secretary Bill Bankhead of the Florida Department of Juvenile Justice presents M&S Foods with Outstanding Vendor Award for its innovative cost saving systems.* Read More

**Award Winning Service!**

***M&S Foods*** **was created because of an expressed need requiring modern solutions.**

**Many in the foodservice industry attempt to be all things to all entities. The M&S Foods consortium caters solely to the government, institutional and provided care market.**

**We understand that government funded and provided care facilities have different nutrit and compliance standards that must be met. Our organization understands the difficulti serving nutritious and appetizing meals on a per diem budget.**

***WE ARE COMMITTED TO HELPING YOU ACHIEVE YOUR GOALS!***



info@msfoodservice.com

Call Toll Free: (866)336-

EXHIBIT
10

# M&S FOODS

*Innovative Food Distribution Systems and Marketing*

**Award Winning Service!**

Home
How It Works
Buyers Group Application
Did You Know...?
FJJA Member Update
U.S.D.A. Recipes
Contact Us

## Ty Walker President &CEO

Ty Walker began his career in the food industry after graduating SUNY Old Westbury University with a degree in Liberal Arts, going to work for Parks Sausage Company in 1981.

In 1982 Parks Sausages was listed on the NYSE. This exciting and monumer event was due in part to Ty's efforts as Sales Manager for the New York tri-st market.

This history-making backdrop has been the cornerstone of Ty's can do philosophy and insistence on excellence.

Ty has worked in sales and marketing for Sara Lee, Sysco Foodservices, Cant Corporation a division of Compass Group and ITC/Pride Enterprises as Executive Director of Sales for its Diversified Supply Management Division.

After years of working for other companies Ty decided to live the American Dream and work for himself. In February of 2000 he started **M&S Foods**, providing food service to institutional and provided care markets.

**M&S** has caught the attention of Governor Jeb Bush and was the subject of a "Great Floridians" press release. **M&S Foods** was also awarded The Florida Juvenile Justice Association Vendor of the Year. Florida Department of Juve Justice Secretary Bill Bankhead presented the award and commended Ty for innovative cost saving systems at a time of substantial budget cuts for all stat agencies.

Mr. Walker has received awards from the University of Florida for his speaki engagements and efforts encouraging other small businesses.

**M&S Foods** award winning service has been recognized in many business forums such as CBS News Market Watch. In addition Ty Walker's comments has appeared in Hispanic Business Magazine.

**M&S Foods**
P.O. Box 141916

Gainesvill Fl 32614
Toll Free (866) 336-5397
Phone (352) 332-5166
Fax (352) 331-8958
www.msfoodservice.com

info@msfoodservice.com

Call Toll Free: (866)336-

M&S FOODS

*Innovative Food Distribution Systems and Marketing*

**Award Winning Service!**

Home
How It Works
Buyers Group Application
Did You Know...?
FDA Member Update
U.S.D.A. Recipes
Contact Us

## Did You Know...?

- **M&S Foods** is the State of Florida's largest human services group purchasing organization for food.
- Group purchasing organizations account for more than 85% of all hos purchases nationwide to lower and control cost, with a combined volu of over $60 billion annually. 40% of those hospitals are faith based.
- Purchasing your foodservice needs at a supermarket or a Sam's Club e can add as much as 30% hidden cost to your bill when factoring in shoppers salary and today's high fuel cost. ***How much is your time worth as an owner operator?***
- Products sold in Sam's club, Costco etc are not true Foodservice bulk s or the same quality .The vast majority of products offered are merely "super family size" or multi-pack which really do not offer the higher y quality and value of true foodservice products.
- Your organization could be liable when you or an employee/member running business errands and have the misfortune of getting into an accident.
- 70% of all residential Florida Dept.of Juvenile Justice contract facilit (many are also funded by DCF) are participants in the M&S Foods Bu group and have been for years.
- Participation in the **M&S Buyers Group** is not based on the size of y operation.

info@msfoodservice.com

Call Toll Free: (866)336-

M&S FOODS

*Innovative Food Distribution Systems and Marketing*

**Award Winning Service!**

Reprinted from FJJA Membe

Home
How It Works
Buyers Group Application
Did You Know...?
FJJA Member Update
U.S.D.A. Recipes
Contact Us

## FJJA Member Update

The Association is pleased to announce the creation of a Contract Providers Food Service Buyers Group. The program is operated by M&S Foods Ltd. Company.

The concept is simple. M&S has established a Food Service Buyers Group for Association members with the goal of providing high quality food products, chemicals, and paper products at lower prices than presently paid by the indi with more responsive delivery schedules from the agency's existing food serv company. This is an opportunity to utilize one of Florida's most experienced knowledgeable food service teams while earning essential CMBE credits for e dollar spent.

The Department has been concerned that most providers are not fully in step with the Governor's initiative. The Governor's Office has charged all agencie task of increasing participation in CMBE programming. This year the Department has made a deliberate effort to contact each of the 25 largest providers asking them to expand their participation in CMBE programs. Afte personnel, food is the largest expenditure for an agency so a program such as is a natural fit.

The Association has met with the Department and they are pleased we have begun this initiative. It is easy to get involved with this program. M&S Foods asking each provider to complete a brief survey on existing food purchase practices including types and quantity of food purchased. A credit applicatio also required. Once completed, the provider can then be added to the networ M&S Foods has contracts in place with food distributors networking the state Once the first delivery is made, the provider can start counting the CMBE cre

The best thing about the buyers group is its ability to reduce prices. Once a certain volume of purchasing takes place, M&S negotiates with food, janitori and paper companies to negotiate lower prices based on the volume of purch This provides an additional benefit to the members participating in the prog All members are encouraged to take a close look at and participate in this program.

For information, contact Christy Johnson at (352) 332-5166 or cjohnson@msfoodservice.com

# M&S FOODS

*Innovative Food Distribution Systems and Marketing*

Award Winning Service!

Home
How It Works
Buyers Group Application
Did You Know...?
FJJA Member Update
U.S.D.A. Recipes
Contact Us

## Pooling resources to Buy Better.

The **M&S Foodservice Purchasing Groups** are designed to offer lower foodservice product and distribution costs.

**M&S Foods** increases purchasing value by pooling volume to decrease proc costs and streamline purchasing. All parties are actively involved in the identification of products for purchase. **M&S Foods** performs all contractin and administrative functions.

| ATTRIBUTES | ADVANTAGES |
|---|---|
| • Streamlined purchasing with Net Terms | • Improves cash flow and cash utilization. Lowers administrative costs. |
| • Combined purchasing power of participants | • Lower product costs. |

**How To Participate**
1) Contact **M&S Foods** or FJJA for program details.
2) Agree to participate in Group Purchasing program.
3) Agree on products to be included in program.
4) Place order through **M&S Foods** distributor channels.

**For more information please contact:**
**M&S Foods**
P.O. Box 141916
Gainesville, FL 32614

Toll Free: (866) 336-5397
Phone: (352) 332-5166
Fax: (352) 331-8958
or
FJJA: (850) 671-3442

info@msfoodservice.com
association@fjja.com

Texas Secretary of State
Roger Williams

UCC | Business Organizations | Trademarks | Account | Help/Fees | Briefcase | Logout

BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800601820 | **Entity Type:** | Foreign Limited Partnership |
| **Original Date of Filing:** | January 20, 2006 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | 841695299 |

| | |
|---|---|
| **Name:** | FreshPoint - City Produce, LP |
| **Address:** | [ADDRESS NOT PROVIDED] |
| **Fictitious Name:** | N/A |
| **Jurisdiction:** | DE, USA |
| **Foreign Formation Date:** | January 9, 2006 |

REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES

| Last Update | Name | Title | Address |
|---|---|---|---|
| January 20, 2006 | FreshPoint, Inc. | General Partner | 1390 Enclave Parkway<br>Houston, TX 77077 USA |

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

EXHIBIT
11

Texas Secretary of State
Roger Williams

UCC | Business Organizations | Trademarks | Account | Help/Fees | Briefcase | Logout

FIND ASSUMED NAME SEARCH

This search was performed on with the following search parameter:
ENTITY NAME : City Produce Austin

| Mark | Filing Number | Name | Entity Type | Entity Status | Name Type | Name Status |
|---|---|---|---|---|---|---|
| ○ | 25947700 | CITY PRODUCE | Domestic For-Profit Corporation | In existence | Assumed | Expired |
| ○ | 800601820 | City Produce | Foreign Limited Partnership | In existence | Assumed | Active |
| ○ | 800601820 | City Produce – Corpus Christi | Foreign Limited Partnership | In existence | Assumed | Active |
| ○ | 800601820 | City Produce – San Antonio | Foreign Limited Partnership | In existence | Assumed | Active |
| ○ | 800601820 | City Produce – Harlingen | Foreign Limited Partnership | In existence | Assumed | Active |
| ○ | 800601820 | City Produce – Rio Grande Valley | Foreign Limited Partnership | In existence | Assumed | Active |
| ○ | 60368800 | CITY CENTER PRODUCTIONS | Domestic For-Profit Corporation | Forfeited existence | Assumed | Expired |
| ○ | 65130900 | SPOT CITY PRODUCTIONS | Domestic For-Profit Corporation | Involuntarily dissolved | Assumed | Expired |
| ○ | 119493800 | RIVER CITY VIDEO PRODUCTIONS | Domestic For-Profit Corporation | In existence | Assumed | Expired |
| ○ | 60368800 | CITY CENTER, CITY CENTER PRODUCTIONS, CITY CENTER COMPANIES CITY CENTER-DALLAS | Domestic For-Profit Corporation | Forfeited existence | Assumed | Expired |

Results 1 to 10 of 10 GO proceed to page [ ] of 1 pages

Instructions:

- To view additional information pertaining to a particular filing select the number associated with the name.
- To place an order for additional information about a filing select the radial button listed under 'Mark' that is associated with the entity and press the 'Order' button.

SYSCO

Search: [illegible]

- Investors
  - Proxy Online
  - Overview
  - Corporate Governance
  - Directors and Officers
  - Stock Quote
  - Stock Chart
  - Press Releases
  - Dividend History
  - DRIP
  - Analyst Coverage
  - Financial Reports
  - Presentations
  - Event Calendar
  - SEC Filings
  - FAQ
  - Email Alert Service
  - Info Request

SYSCO Home > Investor [illegible]

# News Release

View printer-friendly version

<< Back

**SYSCO Corporation Completes Acquisition of FreshPoint Holdings, Inc**

HOUSTON, March 17 /PRNewswire/ -- SYSCO Corporation (NYSE: SYY), the leading foodservice marketing and distribution organization in North America, announced today that the acquisition of FreshPoint Holdings, Inc. has been completed.

Commenting on the agreement, Charles H. Cotros, SYSCO's president and chief executive officer, said, "The produce industry has expanded rapidly over the last five years, and is expected to continue growing this decade at an annual rate of four to five percent. The addition of FreshPoint, one of America's premier produce distributors, is in line with our product penetration initiatives."

"FreshPoint's product expertise, strategic locations and specialized delivery capabilities will allow us to pursue our objective of being the leading national produce supplier," added Thomas E. Lankford, SYSCO's executive vice president, merchandising services and multi-unit sales. "By combining their purchasing power with ours, we will be able to offer customers a breadth of specialty products that previously was unavailable through our broadline distribution companies, which will allow them to enhance their menus with an even greater assortment of consistent quality fresh produce from sources throughout the world."

As previously announced, Mr. Lankford will assume the role of executive vice president, foodservice operations and FreshPoint, Inc. effective July 3. In his new position he will be responsible for overseeing SYSCO's traditional operating company functions nationwide, as well as the FreshPoint specialty produce operation. Milt Parker, FreshPoint's president and chief executive officer, who will become a senior vice president of SYSCO, will be reporting to Mr. Lankford. The five current senior vice presidents of operations, each of whom has responsibility for 10 to 12 traditional operating companies, also will be reporting to him.

"We're very excited to become a part of the nation's leading foodservice distribution company," Mr. Parker said. "Together, SYSCO and FreshPoint can enhance the national scope of products and services currently provided to customers. For example, we will be able to provide customers with a full range of tomato products such as vine-ripened and hot-house tomatoes on a year-round basis, and fresh fruits and vegetables in packaging sized to their own specifications."

FreshPoint Holdings, Inc., headquartered in Dallas, Texas, is one of the largest foodservice and wholesale produce distribution companies in North America. The company has a network of [illegible] facilities located in California, Colorado, Florida, Georgia, Nevada, Texas and Washington, D.C., as well as the Canadian provinces of British Columbia and Alberta. Its annualized sales of approximately $750 million approaches the $1 billion in produce sales that SYSCO generated in fiscal 1999.

SYSCO, listed on the New York Stock Exchange, is the largest foodservice marketing and distribution organization in North America. Generating annualized sales in excess of $18.8 billion based on the results of the first half of fiscal 2000, SYSCO provides its products and services to about 325,000 customers. The SYSCO distribution network currently extends throughout the entire contiguous United States and Alaska as well as portions of Canada.

Safe Harbor Statement under the Private Securities Litigation Reform Act of 1995:

Certain statements made herein are forward-looking statements under the Private Securities Litigation Reform Act of 1995. They include statements regarding annualized sales, growth of the produce industry, growth of the foodservice distribution industry and the ability of SYSCO to realize expected synergies following the acquisition. These statements involve risks and uncertainties and are based on current expectations and management's estimates; actual results may differ materially. Those risks and uncertainties that could impact these statements include the risk and uncertainty relating to sensitivity to conditions in the economy, the foodservice distribution industry's relatively low profit margins, SYSCO's leverage and debt risks, the risk of interruption of supplies due to lack of long-term contracts, work stoppages or otherwise, the successful integration of acquisitions, and other risk factors detailed in SYSCO's Form 10-K for the fiscal year ended July 3, 1999 filed with the Securities and Exchange Commission.

SOURCE SYSCO Corporation

CONTACT: Toni R. Spigelmyer, Assistant Vice President, Investor and Media Relations of SYSCO Corporation, 281-584-1458/

Contact Us Copyright 2002-3 SYSCO Corporation Terms of Use Privacy Policy

EXHIBIT 12

SYSCO

Search:

- Investors
  - Proxy Online
  - Overview
  - Corporate Governance
  - Directors and Officers
  - Stock Quote
  - Stock Chart
  - Press Releases
  - Dividend History
  - DRIP
  - Analyst Coverage
  - Financial Reports
  - Presentations
  - Event Calendar
  - SEC Filings
  - FAQ
  - Email Alert Service
  - Info Request

SYSCO Home > Investor Relations

# News Release

View printer-friendly version

<< Back

**SYSCO's FreshPoint Subsidiary Signs Letter of Intent to Acquire Produce Supplier Overton Distributors Inc.**

HOUSTON--(BUSINESS WIRE)--Feb. 13, 2004--SYSCO Corporation (NYSE:SYY), North America's largest foodservice marketer and distributor, today announced that its FreshPoint produce subsidiary has signed a letter of intent to acquire Overton Distributors Inc. The company is a full-line fresh fruit and vegetable foodservice distributor with locations in Nashville, Tenn.; Charlotte, N.C.; and Raleigh, N.C. Terms of the acquisition, which is subject to completion of SYSCO's due diligence and execution of a definitive agreement, were not disclosed. The transaction is expected to close by March 15, 2004.

Headquartered in Nashville, Overton Distributors was founded in [illegible]. The company supplies foodservice operations throughout Tennessee, North Carolina and South Carolina. John [illegible], who has been majority owner and president of Overton Distributors since 19[illegible], will remain as president with responsibility for the three operations.

Richard J. Schnieders, SYSCO's chairman and chief executive officer, said, "This announcement represents the first expansion effort SYSCO has made to geographically extend our specialty produce offerings since our acquisition of FreshPoint in 2000. The growth opportunities for the specialty produce market, as well as the synergies that our produce operations have been able to provide to SYSCO's traditional broadline operations, make this strategic expansion effort beneficial and value-adding to both SYSCO and our customers."

"We are delighted to be part of SYSCO Corporation and the FreshPoint family," said Mr. [illegible]. "I am confident that their broadline and specialty companies will gain synergies from our operations, and I am equally confident that our employees and customers will also benefit from being associated with North America's leading foodservice supplier."

Brian M. Sturgeon, vice president of SYSCO and president of FreshPoint, added, "Overton Distributors has an excellent reputation for customer service and product offerings, as well as an exceptional management team and employee base. Overton is an established supplier in these key markets that solidify FreshPoint's distribution coverage in the Southeast and expands our market reach as the preferred produce supplier for foodservice operations."

FreshPoint Inc., headquartered in Houston, Texas, is the largest specialty produce distributor in North America and is a wholly owned subsidiary of SYSCO Corporation.

SYSCO is the largest foodservice marketing and distribution organization in North America, providing food and related products and services to approximately 420,000 restaurants, healthcare and educational facilities, lodging establishments and other foodservice customers. The company generated sales of $27.5 billion for calendar year 2003. SYSCO's operations are located throughout the United States and Canada and include broadline companies, specialty produce facilities, custom-cut meat operations, Asian foodservice, hotel supply operations and SYGMA, the company's chain restaurant distribution subsidiary. For more information about SYSCO visit the company's home page at www.sysco.com.

Certain statements made herein are forward-looking statements under the Private Securities Litigation Reform Act of 1995. They include statements regarding the timing and expected benefits of the acquisition of Overton Distributors Inc. These statements are based on management's current expectations and estimates; actual results may differ materially due to certain risks and uncertainties. For example, the timing of the acquisition and the ability of the acquired business and SYSCO to achieve expected results may be affected by successful completion of the acquisition, competitive price pressures, availability of supplies, work stoppages, severe weather, successful integration of the acquired operations by the Company, conditions in the economy, industry growth and internal factors, such as the ability to control expenses. For a discussion of additional factors affecting the Company, see the Company's Annual Report on Form 10-K for the fiscal year ended June 28, 2003 as filed with the Securities and Exchange Commission.

CONTACT: SYSCO Corporation, Houston
John M. Palizza, 281-584-1308

SOURCE: SYSCO Corporation

Contact Us Copyright 2002-3 SYSCO Corporation Terms of Use Privacy Policy

EXHIBIT
13

PrimeNewswire

NEWS ROOM

NEWS Releases

SYSCO

Source: SYSCO Corporation

## SYSCO's FreshPoint Subsidiary Acquires A-One-A Produce & Dairy, Inc.

### Company Also Signs Definitive Agreement to Purchase Ft. Myers-Based Incredible Fresh Produce

HOUSTON, Dec. 22, 2005 (PRIMEZONE) -- SYSCO Corporation (NYSE:SYY) today announced that its FreshPoint produce subsidiary has acquired A-One-A Produce & Dairy, Inc., the largest fresh produce distributor in South Florida. The company also announced that its FreshPoint subsidiary has entered into a definitive agreement to acquire Incredible Fresh Produce, a distributor of fresh produce servicing southwest Florida. Terms of the transactions, which are the fourth and fifth acquisitions announced by FreshPoint in 2005, were not disclosed.

Founded in 1987 and headquartered in Pompano Beach, Florida, A-One-A Produce & Dairy is led by president and chief executive officer Jonathan Lasko, who will continue to serve in that capacity. The company provides a full line of fresh fruit, vegetable and dairy products to customers throughout South Florida including multi-unit and independent restaurants, cruise lines, export accounts, airline caterers, hotels, retail outlets and business and industry locations. A-One-A Produce & Dairy employs 285 associates and operates from a 70,000 square-foot warehouse. For the calendar year ended December 31, 2004, the company generated sales of $80.8 million.

Incredible Fresh Produce, located in Fort Myers, Florida, was founded in 1989 and services foodservice operations throughout the southwestern Florida market, a region that FreshPoint currently services from its Miami and Tampa companies. Upon completion of the acquisition, that company will lease and operate from a new 27,000 square foot facility in Ft. Myers to better serve existing and potential customers.

Richard J. Schnieders, SYSCO's chairman, chief executive officer and president, said, "The addition of these two companies will advance our strategic objective of broadening the reach of our FreshPoint subsidiary and securing its place as Florida's leading produce supplier to foodservice operations."

Brian M. Sturgeon, vice president of SYSCO and president of FreshPoint, added "These customer service-oriented operations will further benefit FreshPoint's customers, the SYSCO broadline companies and our four existing FreshPoint operations in Florida through more localized distribution capabilities and enhanced product offerings. Both operations are very strategic fits, with A-One-A enhancing our presence in the South Florida market and Incredible Fresh Produce expanding our reach in southwestern Florida."

The addition of A-One-A and Incredible Fresh Produce will increase FreshPoint's distribution network in North America to 25 locations. Mr. Sturgeon also noted that FreshPoint will continue to seek strategic acquisitions to enhance its market presence and remain the preferred produce supplier for foodservice operators across North America.

**Recent Quote for SYY**

| | |
|---|---|
| Last Trade: | $ 35.74 |
| Trade Time: | 16:00 ET |
| Change: | +0.23 (+0.6477198%) |
| Prev Close: | +0.23 |
| 52-Wk Range: | 26.80 - 37.042 |

**Other News Releases from SYSCO Corporation**

Barr Appointed President and CEO of Sysco Asian Foods - Jan 28, 2007

Hsiegh Named Executive Vice President of Sysco Intermountain Food Services, Inc. - Dec 20, 2006

Cancelman Named Executive Vice President of Sysco Food Services of Central Florida, Inc. - Dec 15, 2006

Wisnoski Promoted to Vice President of Employee Benefits At SYSCO - Dec 14, 2006

Haupert Appointed Executive Vice President At Sysco Food Services of Central Ohio, Inc. - Dec 14, 2006

More >>

EXHIBIT

11

SYSCO is the largest foodservice marketing and distribution organization in North America, providing food and related products and services to approximately 390,000 restaurants, healthcare and educational facilities, lodging establishments and other foodservice customers. The company generated sales of $30.3 billion for the fiscal year 2005 that ended July 2, 2005. SYSCO's operations are located throughout the United States and Canada and include broadline companies, specialty produce and custom-cut meat operations, Asian foodservice, hotel supply operations and chain restaurant distribution subsidiaries. For more information about SYSCO visit the company's Internet home page at www.sysco.com.

The SYSCO Corporation logo is available at:
http://www.primezone.com/newsroom/prs/?pkgid=747

Certain statements made herein are forward-looking statements under the Private Securities Litigation Reform Act of 1995. They include statements regarding the expected benefits of the acquisition of A-One-A Produce & Dairy, Inc. and Incredible Fresh Produce. These statements are based on management's current expectations and estimates; actual results may differ materially due to certain risks and uncertainties. For example, the ability of the acquired business and SYSCO to achieve expected results may be affected by competitive price pressures, availability of supplies, work stoppages, severe weather, successful integration of the acquired operations by the Company, conditions in the economy, industry growth and internal factors, such as the ability to control expenses. For a discussion of additional factors affecting the Company, see the Company's Annual Report on Form 10-K for the fiscal year ended July 2, 2005 as filed with the Securities and Exchange Commission.

CONTACT: SYSCO Corporation
John M. Palizza, Assistant Treasurer
(281) 584-1308

---

Keywords: SUPERMARKETS, ACQUISITIONS



© 2005 PrimeNewswire All Rights Reserved.

Filing Number: 11699208

05-102 (Rev.1-05/04)

a. TCode 13196

TEXAS FRANCHISE TAX
PUBLIC INFORMATION REPORT

*MUST be filed to satisfy franchise tax requirements*

Do not write in the space above

c. Taxpayer identification number: 17525740570

d. Report year: 2006

Corporation name and address

FRESHPOINT, INC.
1390 ENCLAVE PARKWAY
HOUSTON, TX 77077

Secretary of State file number or, if none, Comptroller uniform number: 0011699208

*If the preprinted information is not correct, please type or print the correct information.*

*The following information MUST be provided for the Secretary of State (SOS) by each corporation or limited liability company that files a Texas Corporation Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.*

☐ Check here if there are currently no changes to the information preprinted in Section A of this report. Then, complete Sections B and C.

*Please sign below!* Officer and director information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers and directors change throughout the year.

Corporation's principal office: SAME AS ABOVE

Principal place of business: SAME AS ABOVE

SECTION A. Name, title and mailing address of each officer and director.

| NAME | TITLE | DIRECTOR | Term expiration (mm-dd-yyyy) |
|---|---|---|---|
| SEE ATTACHED STATEMENT | | ☐ YES | |
| MAILING ADDRESS | | | |
| NAME | TITLE | ☐ YES | |
| MAILING ADDRESS | | | |
| NAME | TITLE | ☐ YES | |
| MAILING ADDRESS | | | |
| NAME | TITLE | ☐ YES | |
| MAILING ADDRESS | | | |
| NAME | TITLE | ☐ YES | |
| MAILING ADDRESS | | | |

SECTION B. List each corporation or limited liability company, if any, in which this reporting corporation or limited liability company owns an interest of ten percent (10%) or more. Enter the information requested for each corporation or limited liability company.

| Name of owned (subsidiary) corporation | State of incorporation | Texas SOS file number | Percentage interest |
|---|---|---|---|
| SEE ATTACHED STATEMENT | | | |
| | | | |

SECTION C. List each corporation or limited liability company, if any, that owns an interest of ten percent (10%) or more in this reporting corporation or limited liability company. Enter the information requested for each corporation or limited liability company.

| Name of owning (parent) corporation | State of incorporation | Texas SOS file number | Percentage interest |
|---|---|---|---|
| FRESHPOINT HOLDINGS, INC. | DE | N/A | 100.00 |

Registered agent and registered office currently on file. (See instructions if you need to make changes.)

Agent: CAPITOL CORPORATE SERVICES, IN
Office: 800 BRAZOS, SUITE 1100
AUSTIN, TEXAS 78701

☐ Check here if you need forms to change this information. Changes can also be made on-line at: http://www.sos.state.tx.us/corp/sosda/index.shtml

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or ...

| sign here ▶ Officer, director, or other authorized person | Title | Date | Daytime phone (Area code and number) |
|---|---|---|---|
| [signature] | Asst Secretary | 05/09/06 | 281 584-1390 |

EXHIBIT 15

FRESHPOINT, INC. TAXPAYER NUMBER: 1-75-2674057-0
TEXAS FRANCHISE TAX RETURN
FYE 07/02/2005

24 7417 5323 1958

Attachment to 2005 Texas Franchise Tax Public Information Report

Section B - Corporations owned 10% or more by Freshpoint, Inc.

| Name | State of Incorporation | Texas SOS number | Percentage Interest |
|---|---|---|---|
| Fowler & Hunting, LLC | Delaware | N/A | 100% |
| FreshPoint Distribution, Inc. | Delaware | 1-75-2611682-4 | 100% |
| FreshPoint of Denver, Inc. | Colorado | N/A | 100% |
| FreshPoint of Las Vegas, Inc. | Delaware | N/A | 100% |
| FreshPoint Tomato, LLC | Delaware | N/A | 100% |
| Overton Distributors, Inc. | Tennessee | N/A | 100% |
| Pacific Produce Co., Ltd. | Canada | N/A | 100% |
| Piranha Produce, Inc. | Delaware | N/A | 100% |
| Sysco IAS Foodservices, Inc. | Canada | N/A | 100% |

FEIN: 75-2574067

## FreshPoint, Inc.

| OFFICERS: | TITLE | NAME | MAILING ADDRESS |
|---|---|---|---|
| | President | Brian M. Sturgeon | 1390 Enclave Parkway Houston TX 77077 |
| | Vice President and CFO | Dean A. [illegible] | 1390 Enclave Parkway Houston TX 77077 |
| | Senior Vice President | Richard J. Dachman | 4721 Simonton Rd. Dallas, TX 75244 |
| | Executive Vice President, Eastern Region | Robert Kent Shoemaker | 1390 Enclave Parkway Houston TX 77077 |
| | Vice President | Michael C. Nichols | 1390 Enclave Parkway, Houston, TX 77077 |
| | Vice President | Robert B. Kaz | 1390 Enclave Parkway, Houston, TX 77077 |
| | Vice President & Secretary | Thomas P. Kurz | 1390 Enclave Parkway, Houston, TX 77077 |
| | Treasurer | Kirk G. Drummond | 1390 Enclave Parkway, Houston, TX 77077 |
| | Assistant Treasurer | Kelly [illegible] | 1390 Enclave Parkway, Houston, TX 77077 |
| | Assistant Secretary | [illegible] S. [illegible] | 1390 Enclave Parkway, Houston, TX 77077 |
| | Assistant Secretary | [illegible] J. [illegible] | 1390 Enclave Parkway, Houston, TX 77077 |

| DIRECTORS: | NAME | MAILING ADDRESS |
|---|---|---|
| | Lawrence J. Accardi | 1390 Enclave Parkway, Houston, TX 77077 |
| | Brian M. Sturgeon | 1390 Enclave Parkway Houston TX 77077 |
| | Michael C. Nichols | 1390 Enclave Parkway, Houston, TX 77077 |

0613224174

## SYSCO in Texas



**American FoodService**
4721 Simonton Road
Dallas, TX 75244
(972) 385-5800 Telephone
(972) 385-5809 Fax
Website

**Freedman Meats, Inc.**
2901 Polk Street
Houston, TX 77003
(713) 229-5000 Telephone
(713) 223-5001 FAX

**Freshpoint, Inc.**
1390 Enclave Parkway
Houston, TX 77077-2099
(281) 899-4242 Telephone
(281) 899-4231 FAX
Website

**SYSCO Corporate**
1390 Enclave Parkway
Houston, TX 77077-2099
(281) 584-1390 Main Switchboard
Website

**SYSCO Food Services of Austin, LP.**
101 Chisholm Trail
Round Rock, TX 78681-5098
(512) 388-8000 Telephone
(512) 388-8114 FAX

**SYSCO Food Services of Dallas, LP**
800 Trinity Drive
P.O. Box 681000
Lewisville, TX 75056
(469) 384-6000 Telephone
Website

**SYSCO Food Services of Houston, LP**
535 Portwall Street
Houston, TX 77029
(713) 672-8080 Telephone
(713) 679-5483 FAX

**SYSCO Food Services of San Antonio, LP**
5711 FM 78
San Antonio, TX 78244-1005
(210) 661-4681 Telephone
(210) 661-3217 FAX

**Watson Sysco Food Services, Inc.**
714 2nd Place
Lubbock, TX 79401
(806) 747-2678 Telephone
(806) 747-3968 FAX

EXHIBIT
16

Cite as: *Size Appeal M&S Foods Ltd. Co.*, SBA No. SIZ-4971 (2008)

**United States Small Business Administration**
**Office of Hearings and Appeals**

| | |
|---|---|
| SIZE APPEAL OF:<br><br>M&S Foods Ltd. Co.<br><br>Appellant<br><br>Appealed from<br>Size Determination No. 3-2008-37 | SBA No. SIZ-4971<br><br>Decided: July 14, 2008 |

APPEARANCES

Pamela J. Mazza, Isaias "Cy" Alba, IV, PilieroMazza PLLC, Washington, D.C., for Appellant.

Johnathan M. Bailey, Bailey & Bailey, P.C., San Antonio, Texas, for Hardie's Fruit & Vegetable Co., Inc.

DECISION

HOLLEMAN, Administrative Judge:

I. Jurisdiction

This appeal is decided under the Small Business Act of 1958, 15 U.S.C. § 631 *et seq.*, and 13 C.F.R. Parts 121 and 134.

II. Issue

Whether the size determination was based on clear error of fact or law. *See* 13 C.F.R. § 134.314.

III. Background

A. The Procurement and Protest

On July 24, 2006, the Defense Logistics Agency (DLA) Defense Supply Center Philadelphia issued solicitation SPM300-06-R-0008 (solicitation). The purpose of the solicitation is to provide a full line of fresh fruit and vegetable support to Department of Defense (DOD) and non-DOD activities for twelve regions located throughout the United States. The

EXHIBIT
17

Contracting Officer (CO) set the procurement totally aside for small business and assigned North American Industry Classification System (NAICS) code 424480, Fresh Fruit and Vegetable Merchant Wholesalers, with a corresponding 500 employee size standard.

On March 12, 2008, the CO notified unsuccessful offeror Hardie's Fruit & Vegetable Co., Inc. (Hardie's) that the apparent successful offeror for the San Antonio region was M&S Foods Ltd. Co. (Appellant).

On March 17, 2008, Hardie's filed a size protest with the CO. Hardie's asserted Appellant is other than small because of Appellant's affiliation with Fresh Point-City Produce, LP (City), a subsidiary of Fresh Point, Inc., a company owned by Sysco Corporation, a large business. Hardie's alleged Appellant must rely entirely on City because Appellant does not own produce storage or distribution facilities in Texas.

On March 18, 2008, the CO forwarded the size protest to the Small Business Administration (SBA) Office of Government Contracting - Area III (Area Office), in Atlanta, Georgia.

## B. The Size Determination

On April 17, 2008, the Area Office issued its size determination. The Area Office acknowledged a waiver of the nonmanufacture rule was granted for the procurement allowing a small business to buy from a large business. The Area Office stated that the waiver does not cede the prime contractor's responsibility to perform the primary and vital requirements of the contract.

The Area Office determined that the primary and vital requirements of the contract are the delivery and warehousing of the produce. The Area Office noted that Appellant is responsible for accounts and the day-to-day management of the procurement. However, the Area Office found Appellant is not capable of labeling, packaging, and distributing the produce. The Area Office determined that Appellant cannot perform the requirements of the procurement without City performing the more complex and costly requirements. Thus, based on the totality of the circumstances, the Area Office found Appellant is unusually reliant on its subcontractor and affiliated with City and Sysco Corporation. The Area Office deemed Appellant other than small for this procurement.

## C. The Appeal

On April 22, 2008, Appellant filed the instant appeal with the Office of Hearings and Appeals (OHA). Appellant argues the Area Office's size determination finding Appellant is unduly reliant on City, under 13 C.F.R. § 121.103(h)(4), is based on clear error of fact and law. First, Appellant asserts the size determination contradicts a prior determination by the Area Office, issued on February 23, 2007, finding Appellant small for an identical procurement. Second, Appellant asserts the Area Office erroneously relied on the ostensible subcontractor rule even though the nonmanufacture rule applies to the procurement. Finally, Appellant argues the Area Office's assertions that Appellant is not performing the primary and vital requirements of

the procurement are incorrect; Appellant states it is responsible for the management functions, sales and marketing, supply chain, proposal creation, customer service, and created and maintains the electric ordering system.

Based on the clear errors of law and fact, Appellant argues the Area Office's size determination is arbitrary and capricious and requests OHA overturn it.

D. Hardie's Response

On May 8, 2008, Hardie's responded to Appellant's Appeal. Hardie's argues Appellant's Appeal should be dismissed for failure to comply with 13 C.F.R. § 134.305 or, in the alternative, denied for failure to demonstrate legal or factual error.

Hardie's argues Appellant failed to comply with OHA's rules of procedure. Specifically, Hardie's asserts Appellant failed to list Hardie's on its Appeal certificate of service and failed to serve Hardie's with a copy of its Appeal as required by 13 C.F.R. § 134.305. Hardie's states it was required to seek out and obtain a copy of the Appeal by its own efforts. Hardie's cites *Size Appeal of AQW, Inc.*, SBA No. SIZ-4359 (1999), to support its argument.

Moreover, Hardie's asserts Appellant's arguments based on a prior size determination are irrelevant. Hardie's states size determinations are procurement specific and non-binding. Additionally, Hardie's argues Appellant is incapable of performing the primary and vital requirements of the procurement and is completely dependent on Sysco. Finally, Hardie's states Appellant's reliance on Sysco is not excused because of the waiver of the nonmanufacture rule.

E. Appellant's Reply to Hardie's Response

On May 12, 2008, I granted Appellant's May 12, 2008 Motion to Reply to Hardie's Response.

On May 19, 2008, Appellant filed a reply to Hardie's response. Appellant argues dismissal for inadequate service is inappropriate in this case. Appellant states it served Hardie's with a copy of the Appeal within two days of filing the Appeal, after Appellant reviewed the Appeal to ensure it did not contain proprietary information. Appellant argues the two-day delay did not prejudice Hardie's ability to prepare a comprehensive response. Appellant distinguishes the two-day delay in this case from *Size Appeal of AQW, Inc.*, SBA No. SIZ-4359 (1999), where the other party was not served prior to the close of record even after receiving explicit instructions from OHA to serve the other party.

Moreover, Appellant asserts Hardie's has mischaracterized its arguments. Appellant states that it is not arguing that an area office is bound by an earlier decision, but Appellant is questioning whether an area office may issue contradictory size determinations based on the same facts without explaining the discrepancy in outcomes. Appellant also disputes Hardie's depiction of Appellant's dependence on Sysco. Appellant asserts it has been supplying

produce to customers for seven years and has numerous delivery sources. Appellant maintains it will be performing most of the primary and vital functions of the procurement and it is a legitimate wholesaler.

To clarify the facts relevant to the case, Appellant moved to submit four documents in support of its Reply to Hardie's Response: (1) an email to the contracting specialist; (2) two teaming agreements with small businesses; (3) a letter from a small business regarding this contract; and (4) Appellant's listing in the Blue Book Services list of active firms in the wholesale fresh fruit and vegetable industry.

## IV. Discussion

### A. Timeliness

Appellant filed its appeal within 15 days of receiving the size determination and, therefore, the appeal is timely. 13 C.F.R. § 134.304(a)(1).

### B. Standard of Review

Appellant has the burden of proving, by a preponderance of the evidence, all elements of its appeal. Specifically, Appellant must prove the Area Office size determination is based on a clear error of fact or law. 13 C.F.R. § 134.314; *Size Appeal of Procedyne Corp.*, SBA No. SIZ-4354, at 4-5 (1999). OHA will disturb the Area Office's size determination only if the administrative judge, after reviewing the record and pleadings, has a definite and firm conviction the Area Office erred in making its key findings of fact or law. *Size Appeal of Taylor Consultants, Inc.*, SBA No. SIZ-4775, at 11 (2006).

### C. New Evidence

In accordance with 13 C.F.R. § 134.308(a), new evidence may not be submitted on appeal unless the judge orders it *sua sponte* or a motion is filed and served establishing good cause for the submission of the new evidence. OHA has found good cause when the new evidence is relevant to the issues on appeal, does not unduly enlarge the issues, and clarifies the facts on the issues on appeal. *Size Appeal of Pointe Precision, LLC*, SBA No. SIZ-4434 (2001).

Appellant submitted three documents with its Appeal which are a part of the record because they are included in the Area Office file: (1) the February 23, 2008 size determination; (2) the April 17, 2008 size determination; and (3) Appellant's United States Department of Agriculture license to be a fresh and frozen produce wholesale dealer. Appellant pleads for the submission of four additional documents: (1) an email to the contracting specialist; (2) two teaming agreements with small businesses; (3) a letter from a small business regarding this contract; and (4) Appellant's listing in the Blue Book Services list of active firms in the wholesale fresh fruit and vegetable industry.

Appellant's arguments for inclusion of new evidence in support of its Reply to Hardie's Response are unpersuasive. A party is responsible for presenting all evidence to the Area Office. 13 C.F.R. 121.1009(b). A party cannot submit evidence on appeal it neglected to submit at the protest stage. *Size Appeal of Carriage Abstract, Inc.*, SBA No. SIZ-4430 (2001). Appellant has not established good cause to enlarge the record to incorporate the proffered documents. Therefore, the motion for submission of new evidence is DENIED and I EXCLUDE Appellant's additional information from the record.

D. The Nonmanufacture Rule

The nonmanufacturer rule, 13 C.F.R. § 121.406(b), allows a small business to provide goods under a manufacturing contract if: (1) it has less than 500 employees; (2) is primarily engaged in wholesale or retail trade; and (3) provides the end item of a small business manufacturer or processor. However, when no small business can provide a product meeting the specifications of a solicitation, the SBA Associate Administrator for Government Contracting can grant an individual waiver of the nonmanufacture rule. The waiver allows a small business to be compliant without enforcing the third prong of the nonmanufacture rule, i.e. without providing the end item of a small business manufacturer or processor.

E. Waiver of the Nonmanufacture Rule

In this case, an individual waiver, 13 C.F.R. § 121.406(b)(3)(i), for this procurement was granted on March 16, 2006. The individual waiver is based on information that no small businesses "can supply the depth and breadth of products required" and covers the purchase of items for the duration of the contract. Waiver for SPM300-06-R-0008, dated March 16, 2008.

It is undisputed that Appellant, with seven employees, meets the first prong of the nonmanufacturer rule and, despite Hardie's arguments to the contrary, the record supports that Appellant is a wholesale dealer of fresh and frozen produce. Thus, the critical question for this case is what is the extent of the waiver of the nonmanufacture rule for this procurement; specifically, does the waiver include warehousing and delivery.

In investigating the extent of the waiver, I am mindful that this is an individual waiver specific to this procurement. An individual waiver is more comprehensive in scope than a less specific class waiver because SBA has already completed a review of the precise requirements of the product and supply chain before granting a waiver for the solicitation. The language of the waiver states: "A waiver of the Nonmanufacture Rule is hereby established for the purchase to cover the line of various fresh fruits and vegetables in the [Produce Prime Vendor], under contract number SMP300-06-R-0008." Waiver for SPM300-06-R-0008, dated March 16, 2008. The waiver does not exclude warehousing and deliveries of the perishable produce. The waiver applies to the whole procurement.

The solicitation also acknowledges a waiver of the nonmanufacture rule was issued by SBA to allow small businesses "to procure products from large businesses." The solicitation does not limit the extent of the waiver of the nonmaunfacture rule. The solicitation does indicate that the four primary evaluation criteria for the procurement are the business's: (1) food safety,

inventory turnover, product freshness, and temperature and humidity controls in maintaining fresh produce; (2) experience on contracts similar in size and scope; (3) distribution plan; and (4) use of DLA Mentoring Businesses Agreements, with the most comprehensive plans assisting new business ventures with small businesses receiving the highest ratings.

Based on the text of the waiver, the solicitation, and the unique temperature, food safety, and inventory requirements in buying, storing, and delivering fresh produce, it is clear the individual waiver applies to the entire procurement, including warehousing and delivery of the produce. SBA granted the CO's request for a waiver of the nonmanufacture rule for this procurement without limitations. SBA accepted the CO's determination that no small business manufacturers are capable of performing the contract in accordance the government's specifications. Therefore, it was clear error for the Area Office to attempt to constrain a waiver of the nonmanufacture rule specifically granted for this procurement and inappropriate for the Area Office to find Appellant other than small due to unusual reliance on a subcontractor.

The Area Office had an opportunity to examine the waiver of the nonmanufacture rule for a February 23, 2007 size determination for a predecessor contract. At that time, SBA did not reveal limits on the extent on the waiver and, in fact, determined Appellant to be small for the procurement. The record before me does not explain why the Area Office has abruptly changed course from its earlier size determination. However, if the analysis in the size determination underlying this appeal is adhered to, the nonmanufacture rule waiver granted for this procurement would not serve its intended purpose.

Furthermore, the solicitation places significant importance on the successful awardee's customer service and support functions. The solicitation requires the successful awardee to: maintain an electronic catalog of items available; have a dedicated customer service representative; provide weekly produce market forecasts; interface with the government's web-based ordering tool; insure produce availability; invoice transactions; create electronic reports; and direct appropriate quantities of produce to the proper locations at the best price. These are all requirements Appellant is responsible for performing without reliance on City. Moreover, in addition to quality assurance, DLA placed considerable weight on a business's experience on contracts similar in size and scope when evaluating proposals and DLA also placed significance on a business's distribution plan. The record establishes that Appellant has seven years experience supplying to multiple sites in the southern United States. Thus, even if SBA did not grant a waiver of the nonmanufacture rule, the record does not support the Area Office's determination that City is performing the primary and vital requirements of the contract.

Since the SBA did issue an individual waiver of the nonmanufacture rule, the Area Office committed a clear error of law when it determined Appellant was unusually reliant upon City and thus affiliated with them under the ostensible subcontractor rule. 13 C.F.R. § 121.103(h)(4). Accordingly, Appellant is small concern for the instant procurement.

## V. Conclusion

For the above reasons, I REVERSE the Area Office's size determination and find Appellant M&S Foods Ltd. Co., is a small business for the instant DLA procurement.

This is the final decision of the Small Business Administration. *See* 13 C.F.R. § 134.316(b).

CHRISTOPHER HOLLEMAN
Administrative Judge

CERTIFICATE OF SERVICE

I hereby certify that, on July 15, 2008, I served the foregoing, by facsimile transmission upon the following:

Pamela J. Mazza
Isaias "Cy" Alba, IV
Piliero Mazza, PLLC
888 17th Street, NW, Suite 1100
Washington, DC 20006
Fax (202) 857-0200

Mitchell Morand, Area Director
U.S. Small Business Administration
Office of Government Contracting, Area III
233 Peachtree Street, Suite 1805
Atlanta, GA 30303
Fax (404) 331-2956

Frank G. Holder, Contracting Officer
Defense Supply Center Philadelphia
Subsistence Supplier Operations
700 Robbins Avenue
Philadelphia, PA 19111
Fax (215) 737-~~3311~~ 7166

Johnathan M. Bailey, Esq.
Bailey & Bailey, P.C.
Counsel for Hardie's Fruit & Vegetable Co..
The Milam Building, Suite 711
115 East Travis Street
San Antonio, TX 78205-8246
Fax (210) 225-8246

Peter Schalestock, Esq.
General Counsel
U.S. Small Business Administration
409 Third Street, S.W.
Washington, DC 20416-0005
Fax (202) 205-6846

John W. Klein, Esq.
Assoc. General Counsel for Procurement Law
U.S. Small Business Administration
409 Third Street, S.W., Fifth Floor
Washington, DC 20416-0005
Fax (202) 205-6873

Sharon taylor
Office of Hearings and Appeals