IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | |
|---|---|
| HARDIE'S FRUIT & VEGETABLE COMPANY -SOUTH, LP, | |
| Plaintiff, | |
| | No. 08-534C |
| v. | (Senior Judge Hodges) |
| THE UNITED STATES, | |
| Defendant. | |

**DEFENDANT'S MOTION FOR JUDGMENT ON THE COMPLAINT AND UPON THE ADMINISTRATIVE RECORD**

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARTIN F. HOCKEY
Assistant Director

DAVID M. HIBEY
Trail Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 307-0163
Fax: (202) 305-7643

OF COUNSEL:
BEVERLEY HAZLEWOOD LEWIS
Office of General Counsel
Small Business Administration
409 Third Street, S.W., Suite 7200
Washington D.C. 20415

Dated: August 22, 2008

Attorneys for Defendant

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii

DEFENDANT'S MOTION FOR JUDGMENT ON THE COMPLAINT AND UPON THE ADMINISTRATIVE RECORD . . . . . . . . . . 1

QUESTIONS PRESENTED . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 5

I. STANDARD OF REVIEW . . . . . . . . . . 5

A. Plaintiff Must Show A Violation Of A Statute Or Regulation And Prejudice . . . . . . . . . . 5

1. Rule 52.1 Standards . . . . . . . . . . 5

2. Standard Of Review Of Agency Procurement Decisions . . . . . . . 6

II. The Government Is Entitled To Judgment Upon The Administrative Record Because Hardies Cannot Succeed Upon The Merits . . . . . . . . . . 8

A. To The Extent Hardie's Contends That The Solicitation Was Not Properly Classified Then Hardie's Is In Actuality Challenging The NAICS Code Classification Of The Procurements, And Such A Challenge Is Untimely And Improperly Before This Court . . . . . . . . . . 8

B. OHA's Unnecessary But Rational Analysis Of The Solicitation Favors Judgment For The Government . . . . . . . . . . 13

III. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF . . . . . . . . . . 16

A. Standard For Obtaining Injunctive Relief . . . . . . . . . . 16

B. Success On The Merits . . . . . . . . . . 17

C. Irreparable Harm And Balance Of Harms . . . . . . . . . . . . . . . . . . . . . . . . 17

D. Public Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## CASES

A & D Fire Protection, Inc. v. United States,
72 Fed. Cl. 126 (2006) . . . . . . . . 5

Amoco Prod. Co. v. Vill. of Gambell, Alaska,
480 U.S. 531 (1987) . . . . . . . . 16

Banknote Corp. of Am., Inc. v. United States,
365 F.3d 1345 (Fed. Cir. 2004) . . . . . . . . 6

Bannum, Inc. v. United States,
404 F.3d 1346 (Fed. Cir. 2005) . . . . . . . . 5

CACI, Inc.-Federal v. United States,
719 F.2d 1567 (Fed. Cir. 1983) . . . . . . . . 6

EP Productions, Inc. v. United States,
63 Fed. Cl. 220 (2005) . . . . . . . . 6, 16

Emery Worldwide Airlines, Inc. v. United States,
264 F.3d 1071 (Fed. Cir. 2001) . . . . . . . . 7

Fire-Trol Holdings, LLC v. United States,
66 Fed. Cl. 36 (2005) . . . . . . . . 7

Foundation Health Fed'l Servs. v. United States,
No. 93-1717, 1993 WL 738426 (D.D.C. 1993) . . . . . . . . 17

Honeywell, Inc. v. United States,
870 F.2d 644 (Fed. Cir. 1989) . . . . . . . . 7

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) . . . . . . . . 6, 7, 10

JDL Constr., Inc., v. United States,
14 Cl. Ct. 825, 829 (1988) . . . . . . . . 18

KSEND v. United States,
69 Fed. Cl. 103 (2005), aff'd, 184 Fed. Appx. 956 (Fed. Cir. 2006) . . . . . . . . 8, 16

LABAT-Anderson, Inc. v. United States,
65 Fed. Cl. 570 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

M. Steinthal & Co. v. Seamans,
455 F.2d 1289 (D.C. Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Marwais Steel Company, Re: Engineered Air Systems, Inc., SBA No. 3884,
1994 WL 45615 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Minor Metals, Inc. v. United States,
38 Fed. Cl. 379 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,
463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

PGBA, LLC v. United States,
389 F.3d 1219 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tech Systems, Inc. v. United States,
50 Fed. Cl. 216 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Vanguard Sec. Inc. v. United States,
20 Cl. Ct. 90, 113 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n,
758 F.2d 669 (D.C. Cir. 1985)) (additional citation omitted . . . . . . . . . . . . . . . 17

Zenith Radio Corp. v. United States,
710 F.2d 806, 810 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATUTES**

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

61 Fed. Reg. 3310, 3311 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13 C.F.R. § 121.103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

13 C.F.R. § 121.1102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

13 C.F.R. § 121.201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

13 C.F.R. 121.402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11, 14

13 C.F.R. §121.406(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

13 C.F.R. § 125.6(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

13 C.F.R. § 314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 644(o)(1)(A) and (B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1491(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | | |
|---|---|---|
| HARDIE'S FRUIT & VEGETABLE COMPANY -SOUTH, LP, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-534C (Senior Judge Hodges) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT ON THE COMPLAINT AND UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 52.1 of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court grant its motion for judgment on plaintiff, Hardie's Fruit & Vegetable Co.-South, LP's ("Hardie's") complaint upon the administrative record. As the administrative record in this case reveals, the decision of the Small Business Administration ("SBA") to designate M&S Foods Co., Ltd. ("M&S") a small business for the solicitation at issue in this case was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## QUESTIONS PRESENTED

1. Whether SBA's decision to designate M&S a small business for the purposes of this solicitation was rational and in accordance with the law.
2. Whether SBA interpreted the non-manufacturer rule in accordance with the law.
3. Whether plaintiff's request for permanent injunctive relief should be denied.

## STATEMENT OF THE CASE

Hardie's is appealing the size determination made by SBA's Office of Hearings and Appeals (OHA) that found that M&S qualified as a small business for purposes of solicitation No. SPM300-06-R-0008 issued by the Defense Supply Center Philadelphia (DSCP). DSCP is a department within the Defense Logistics Agency (DLA). Prior to issuing this solicitation, DSCP requested a waiver from the SBA of the non-manufacturer rule on February 9, 2006. This waiver was granted on March 16, 2006. This waiver permitted a small business concern to bid on this solicitation and subcontract any part of the solicitation to a non-small business concern. DSCP issued its intent to award the contract to M&S on March 16, 2008. Hardie's appealed to the SBA contending that the ostensible subcontractor rule did not permit M&S to be considered a small business for purposes of this solicitation. The SBA's Area Office agreed, and found that M&S was not a small business concern. M&S appealed to SBA's Office of Hearings and Appeals (OHA), and OHA reversed the Area Office's decision based principally on an error of law: that the ostensible contractor rule could not apply because the non-manufacturer rule vitiated the ostensible subcontractor rule.

## STATEMENT OF FACTS

The DSCP Subsistence Supplier Operations Directorate-Produce Division oversees the provision of Fresh Fruits and Vegetables (FF&V) to military food service installations and USDA school lunch customers throughout the United States. AR 97. Prior to March 31, 2008, the DSCP utilized a network of 13 field offices known as Defense Subsistence Offices and Produce Buying Offices to fulfill FF&V obligations. Id. These field offices managed the provision of FF&V to military installations and schools through a network of approximately 1200 Blanket Purchase Agreements (BPA) with vendors throughout the country. Id. Every

month these offices consolidated over 12,000 customer orders and initiated over 1600 vendor orders in support of the Fresh Fruit and Vegetable needs to approximately 16,000 public school delivery points, 1000 military delivery points, 35 tribe and reservation delivery points, and several job corps around the world to include Alaska, Puerto Rico, Greenland, Virgin Islands, Guantanamo Bay, Hawaii, Guam, Korea, and Ecuador. Id.

In June 2005, the Defense Logistics Agency announced its intention to close all field offices. AR 97. With this reduction in force, DLA soon thereafter initiated a reorganization of the FF&V provision scheme. DLA determined that the distribution of FF&V to military installation and schools should be supported through the award of long term contracts to small businesses. AR 98. DLA introduced a long-term contract support strategy to reduce the administrative strain on the field offices by allowing DSCP to connect customers directly to vendors through electronic ordering systems. Id.

When DSCP issued solicitation No. SPM300-06-R-0008 on July 24, 2006, DSCP intended to award long term contracts to small businesses for the provision of FF&V to military installations and schools located within 45 geographic zones. AR 267. DSCP anticipated making 45 separate awards based upon these predetermined geographic clusters. The San Antonio zone contract is at issue in the instant bid protest. The San Antonio zone has one of the highest concentrations of DSCP customers with approximately 118 military customer locations and 882 public school customer locations within the San Antonio zone.

Prior to issuing this solicitation, DSCP determined that no small business could "provide the entire line of fresh fruits and vegetables required under this solicitation and therefore request[ed] a waiver of the non-manufacturer rule." AR 78. The non-manufacturer rule is an

exception to the requirement that in a contract for supplies the small business concern must either be the manufacturer of the end item being procured or qualify as a non-manufacturer. 13 C.F.R. §121.406(a). In DSCP's February 9, 2006 request to the SBA for a waiver, DSCP identified a North American Industry Classification System ("NAICS") code for the SBA so that the SBA would be able to determine whether a waiver was appropriate. SBA utilizes the NAICS in establishing size standards for each of the industry classifications. 13 C.F.R. § 121.201. DSCP identified the NAICS code for this solicitation as 424480, Fresh Fruit and Vegetables Merchant Wholesalers.

On March 16, 2006, the SBA granted a waiver of the non-manufacturer rule for this solicitation. AR 78. The SBA granted the waiver based upon "current information, and information supplied to us indicating that there are no known small business manufacturers that can supply the depth and breadth of the products required by the Government." AR 78. On or about March 12, 2008, DSCP informed Hardie's of the Government's intent to award the San Antonio zone under solicitation SPM300-06-R-0008 to M&S. AR 507.

Hardie's filed a timely bid protest with the DSCP based upon the SBA's size determination, and on March 18, 2008, DSCP forwarded the protest to the SBA Office of Government Contracting – Area III Area Office, in Atlanta, Georgia.

On March 31, 2008, the DSCP completed the closure of twelve field offices around the country which represented a cumulative loss of 148 employees. Due to the protest, the long-term contract has not been awarded and the San Antonio zone continues to use blanket purchase agreements. DSCP began supporting San Antonio on April 1, 2008, after the March 31 field office closures. In the absence of a long-term contract, several patchwork efforts have been made by DSCP to continue to support San Antonio. DSCP has transferred personnel from their

normal jobs and trained them to use the unique FF&V receipt and ordering systems. These personnel were pulled from dissimilar career fields, such as food technologist, tailored vendor logistics support specialist, customer account managers, produce contracting interns, clerical, and administrative support personnel. The result has been an ability to provide only the barest of services in order to keep food supplied to the customers.

## ARGUMENT

## I. STANDARD OF REVIEW

### A. Plaintiff Must Show A Violation Of A Statute Or Regulation And Prejudice

#### 1. Rule 52.1 Standards

Pursuant to RCFC 52.1,[1] this Court reviews the agency's procurement decision to determine whether it is supported by the already-existing administrative record. The standards applicable to a motion for judgment upon the administrative record differ from those applied in the context of a Rule 56 motion for summary judgment. Bannum, Inc. v. United States, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005); Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 222 (2001) (explaining basis for judgment based upon the administrative record). Unlike a Rule 56 motion, "proceeding under RCFC [52.1] merely restricts the evidence to the agency record. . . ." Bannum, 404 F.3d at 1356. Thus, under RCFC 52.1, the Court determines whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. A & D Fire Protection, Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). The Court must make factual findings where necessary. Id.

[1] On June 20, 2006, following the Federal Circuit's decision in Bannum, Inc. v. United States, 404 F.3d 1346 (Fed. Cir. 2005), RCFC 52.1 replaced RCFC 56.1 to avoid any confusion with the standards applicable to summary judgment.

**2. Standard Of Review Of Agency Procurement Decisions**

The Court possesses jurisdiction to entertain both pre-award and post-award bid protests under the Tucker Act, 28 U.S.C. § 1491(b), as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"). Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004). However, this Court's review of agency procurement decisions is quite limited. Under the ADRA, the Court applies a standard of review adopted from the Administrative Procedure Act, codified at 5 U.S.C. § 706. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). This standard of review provides that a reviewing court shall set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." Id. at 1332 n.5.

In the bid protest context, this Court should enjoin a procurement decision only when "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa Construzioni, 238 F.3d at 1332. When a bidder's challenge implicates the first ground, the protestor "bears a heavy burden" of showing that the agency's decision had no rational basis. Id. at 1333. This heavy burden stems from the wide discretion afforded to contracting officers "upon a broad range of issues confronting them in the procurement process." Id. at 1332. Indeed, this Court will "interfere with the government procurement process 'only in extremely limited circumstances.'" EP Productions, Inc. v. United States, 63 Fed. Cl. 220, 223 (2005) (quoting CACI, Inc.-Federal v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983)).

When a challenge is brought on the second ground – a violation of regulation or procedure - the plaintiff must show a clear and prejudicial violation of applicable statutes or regulations. Banknote, 365 F.3d at 1351 (internal quotations and citations omitted) (quoting

Impresa, 238 F.3d at 1332-33). To show prejudice, plaintiff must show that there was a "substantial chance" that it would have been awarded the contract but for agency errors in the bid process. Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001).

An agency's decision could be found irrational if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). In evaluating an agency's decision, the Court may not substitute its judgment for that of the agency. "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). In particular, when the Court considers "a purely factual question within an area of competence of an administrative agency created by Congress . . . the Court will recognize the relevant agency's technical expertise and defer to its analysis unless it is without substantial basis in fact." Fire-Trol Holdings, LLC v. United States, 66 Fed. Cl. 36, 40 (2005) (internal quotes and citations omitted). Moreover, deference must be afforded to the congressional policy embodied in the Small Business Act which places the responsibility for size determinations in the SBA. 15 U.S.C. § 632(a)(3); 13 C.F.R. § 121.406.

## II. The Government Is Entitled To Judgment Upon The Administrative Record Because Hardies Cannot Succeed Upon The Merits

### A. To The Extent Hardie's Contends That The Solicitation Was Not Properly Classified Then Hardie's Is In Actuality Challenging The NAICS Code Classification Of The Procurements, And Such A Challenge Is Untimely And Improperly Before This Court

The Small Business Act grants the SBA the power to establish size standards and other criteria for qualification as a small business. Advanced Sys. Tech., 69 Fed. Cl. at 476 (citing 15 U.S.C. § 632(a)(2)(A). To determine which entities qualify as small business concerns, the SBA uses the NAICS. Id. In order to bid on a particular procurement, a small business concern may not exceed the size standard designated in the solicitation. 13 C.F.R. 121.402.

The procuring agency contracting officer is responsible for selecting "the NAICS code which best describes the principal purpose of the product or service being acquired" in a particular solicitation. Id. (citing 13 C.F.R. § 121.402(b); 48 C.F.R. § 19.303). SBA regulation 13 C.F.R. § 121.402(b) lists the factors the contracting officer is to consider in designating the appropriate NAICS code:

> The procuring agency contracting officer, or authorized representative, designates the proper NAICS code and size standard in a solicitation, selecting the NAICS code which best describes the principal purpose of the product or service being acquired. Primary consideration is given to the industry descriptions in the NAICS United States Manual, the product or service description in the solicitation and any attachments to it, the relative value and importance of the components of the procurement making up the end item being procured, and the function of the goods or services being purchased. Other factors considered include previous Government procurement classifications of the same or similar products or services, and the classification which would best service the purposes of the Small Business Act. A procurement is usually classified according to the component which accounts for the greatest percentage of contract value. Procurements for supplies must be classified under the appropriate manufacturing NAICS code, not under the wholesale trade NAICS code.

13 C.F.R. § 121.402(b) (emphasis added). The NAICS code assigned to a procurement and its corresponding size standard is final unless timely appealed to OHA, or unless OHA assigns a NAICS code or size standard in connection with a formal size determination or size appeal. Id. § 121.402(c),(d). An appeal from a contracting officer's NAICS code designation and applicable size standard must be served and filed within 10 calendar days after the issuance of the initial solicitation. 13 C.F.R. § 121.1103(b)(1). OHA will summarily dismiss an untimely NAICS code appeal. Id. Pursuant to SBA regulations, OHA is an administrative remedy that must be exhausted before judicial review of a NAICS code designation may be sought in court. 13 C.F.R. § 121.1102 (emphasis added).

In this matter, Solicitation No. SPM300-06-R-0008, issued more than two years ago on July 24, 2006, was assigned the NAICS code 424480 for Fresh Fruit and Vegetables Merchant Wholesalers. NAICS code 424480 is not an NAICS code for manufactured products. See 2002 NAICS Codes and Titles, U.S. Census Bureau, available at http://www.census.gov/epcd/www/naics.html (last modified March 28, 2008).

In selecting this NAICS code, the DSCP contracting officer had to determine which code "best describes the principal purpose of the product or service being acquired." 13 C.F.R. § 121.402(b). The contracting officer had to consider "the relative value and importance of the components of the procurement making up the end item being procured" among other things. See id. Hardie's challenge to DSCP's and SBA's classification of the solicitation for not contemplating the service elements of the contract, is really challenging the NAICS code selection for the solicitation. Hardie's challenge to the NAICS codes is untimely. It is well past the 10-day deadline for challenging the NAICS code for this solicitation. Also, Hardie's could not challenge the NAICS code in this Court until it had presented its appeal to OHA, which is a

mandatory administrative remedy that must be exhausted. 13 C.F.R. § 121.1102. Accordingly, any challenge to the classification for this solicitation is untimely and improperly before this Court.

In reviewing Area Office size determinations, OHA is bound by the standard of clear error of fact or law. 13 C.F.R. § 314.1 As discussed above, absent a timely challenge to a procurement's classification, the classification is final and subsequent adjudications concerning the procurement must proceed as if the classification were correct, whether or not, in hindsight, a different classification would have been more appropriate. The regulatory scheme providing for administrative adjudications of NAICS code designations and/or procurement classifications serves an important public policy goal by accommodating both a review of the challenged designation as well as the expeditious processing of government procurements.

B. Application Of The Non Manufacturer Rule Vitiates The Ostensible Subcontractor Rule

SBA regulations provide for different subcontracting limitations, depending on the contract classification:

> (1) In the case of a contract for services (except construction), the concern will perform at least 50 percent of the cost of the contract incurred for personnel with its own employees.
> (2) In the case of a contract for supplies or products (other than procurement from a non-manufacturer in such supplies or products), the concern will perform at least 50 percent of the cost of manufacturing the supplies or products (not including the costs of materials).
> (3) In the case of a contract for general construction, the concern will perform at least 15 percent of the cost of the contract with its own employees (not including the costs of materials).
> (4) In the case of a contract for construction by special trade contractors, the concern will perform at least 25 percent of the cost of the contract with its own employees (not including the costs of materials).

---

1 And this Court's review of the OHA decision is limited to whether the OHA decision was arbitrary, capricious, an abuse of discretion or contrary to law. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001).

13 C.F.R. § 125.6(a). See also 15 U.S.C. §§ 644(o)(1)(A) and (B).

While it may be the case that a solicitation calls for the provision of a combination of services and supplies, for the purposes of small business contracting, the contracting officer is required to designate the NAICS code on each solicitation "which best describes the principal purpose of the product or service being acquired." 13 C.F.R. § 121.402(b). Following this designation, the appropriate subcontracting limitations can be determined. Thus, if a solicitation is designated with a NAICS code in the services industry, the subcontracting limitations for a services contract will apply; likewise, if the solicitation is designated with a NAICS code in the manufacturing industry, the subcontracting limitations for supply (manufacturing) contracts will apply.

Hardie's erroneously contends that the subcontracting limitations applicable to services contracts should apply to the services portion of this solicitation and, therefore, would require application of the ostensible subcontractor rule. Under the ostensible subcontractor rule,

> [a] contractor and its ostensible subcontractor are treated as joint venturers, and therefore affiliates, for size determination purposes. An ostensible subcontractor is a subcontractor that performs primary and vital requirements of a contract, or of an order under a multiple award schedule contract, or a subcontractor upon which the prime contractor is unduly reliant.

13 C.F.R. § 121.103(h)(4). Hardie's contention, at a minimum, ignores the fact that only one subcontracting limitation applies to a solicitation, and that limitation depends, in the first instance, on the solicitation's classification as either a service, supply or construction contract. Because this solicitation was treated as a supply contract for which a waiver of the non-manufacturer rule was obtained, only the performance requirements of a supply (manufacturing) contract are relevant to this matter.

The non-manufacturer rule is an exception to the requirement that in a contract for supplies the small business concern must either be the manufacturer of the end item being procured or qualify as a non-manufacturer. 13 C.F.R. §121.406(a). Where the concern is the manufacturer of the products being supplied, it must perform at least 50 percent of the cost of manufacturing, not including cost of materials. 13 C.F.R. § 125.6(a)(2). Otherwise, the concern may qualify as a non-manufacturer if it: (1) does not exceed 500 employees; (2) is primarily engaged in the retail or wholesale trade and normally sells the type of product being procured; and (3) will provide the end item of a small business manufacturer or obtain a waiver of such requirement as provided for under the regulations. 13 C.F.R. § 121.406(b). The SBA may waive the requirement to provide the end item of a small business manufacturer if:

> (i) the contracting officer has determined that no small business reasonably can be expected to offer a product meeting the specifications (including period of performance) required by a particular solicitation and SBA review and accepts that determination; or (ii) SBA determines that no small business manufacturer or processor of the product or class of products is available to participate in the Federal procurement market.

13 C.F.R. § 121.406(b)(3). The two waiver possibilities are called "individual" and "class" waivers, respectively. 13 C.F.R. § 121.406(b)(4). Thus, qualification as a non-manufacturer relieves the small business of the 50 percent performance requirement under a supply contract and allows that business to subcontract the requirements to another small business or, in the case of a waiver, a large business.

Here, OHA correctly determined that because the non-manufacturer rule (and its waiver) applied to this solicitation, the ostensible subcontractor rule is rendered inapplicable. See Marwais Steel Company, Re: Engineered Air Systems, Inc., SBA No. 3884, 1994 WL 45615 (1994) (the ostensible subcontractor rule does not apply where an offeror's eligibility to participate in a small business set aside is based upon an evaluation of an offeror's small

business size status under the non manufacturer rule). OHA's decision is correct because to apply the ostensible subcontractor rule would undermine the purpose of the non manufacturer rule. In other words, if a small business concern qualifies as a non-manufacturer, it is authorized to subcontract the primary and vital requirements of a supply contract and permitted to rely upon the subcontractor to perform the contract. Accordingly, applying the ostensible subcontractor rule in such a case contravenes the entire purpose of the non-manufacturer rule or its waiver.

C. OHA's Unnecessary But Rational Analysis Of The Solicitation Favors Judgment For The Government

Although the OHA decision discussed performance of the services component of the procurement, OHA need not have reached this issue. OHA correctly concluded that it was an error of law for the Area Office to apply the ostensible contractor rule where an individual waiver of the non-manufacturer rule had been granted. SBA granted a waiver of the non-manufacturer rule for the subject procurement and, therefore, no other subcontracting limitation could apply. Thus, it was unnecessary to consider how much of the services M&S would perform. While OHA did not possess jurisdiction to interfere with the contract classification, the NAICS code designation, or waiver of the non-manufacturer rule, it was within OHA's jurisdiction to rule on the misapplication of law that occurred in the Area Office decision.

In determining whether M&S met the requirements of the non-manufacturer rule, OHA found that M&S "with seven employees, meets the first prong of the non-manufacturer rule and, despite Hardie's arguments to the contrary, the record supports that Appellant is a wholesale dealer of fresh and frozen product." A.R. at 741. An individual waiver of the non-manufacturer rule was obtained by DSCP for the solicitation in question, and it was not within OHA's jurisdiction to question whether or not the non-manufacturer rule should have applied to the

solicitation because that issue had never been timely challenged.2 Therefore, OHA rationally determined that M&S was qualified under 13 C.F.R. § 121.406 to provide the products in question.

OHA next determined that the waiver applied to the whole procurement, including warehousing and delivery. OHA found that: (1) the individual waiver was "comprehensive in scope" because SBA had already reviewed "the precise requirements of the product and supply chain"; (2) the waiver expressly stated that it was to "cover the line of various fresh fruits and vegetables"; and (3) the waiver did not expressly exclude warehousing and delivery of the perishable produce. A.R. 741 (page 5). OHA noted that "[b]ased on the text of the waiver, the solicitation, and the unique temperature, food safety, and inventory requirements in buying, storing, and delivering fresh produce, it is clear the individual waiver applies to the entire procurement." A.R. 742 (pg. 6). These determinations are not irrational.

Unlike a class waiver, which does not consider individual contract requirements, an individual waiver takes into account the specific contract requirements and whether or not a small business could reasonably be expected to offer a product meeting the contract specifications, including period of performance. See 13 C.F.R. § 121.406(3)(i). Thus, it was reasonable for OHA to conclude that in order for a small business to provide fresh produce pursuant to the specific requirements of the solicitation in question regarding unique temperature controls, food safety, storage and delivery, that warehousing and delivery must be covered by the waiver. Moreover, as discussed above, OHA's determination is entirely consistent with the

---

2 We note that the solicitation at issue has been designated a NAICS code (424480) which falls in the Wholesale Trade Industry under Merchant Wholesalers, Nondurable Goods, Fresh Fruit and Vegetable Merchant Wholesalers. Under SBA regulations, only manufacturing NAICS should be used for procurement of supplies (13 C.F.R. § 121.402(b). However, as discussed above, if a procurement's NAICS code is not timely challenged, the code is final.

regulatory scheme in that, where the non-manufacturer rule and/or waiver applies, performance of the primary and vital functions of the procurement are permitted to be subcontracted.

To the extent Hardie's contends that OHA's decision would create a "broker" scenario allowing a firm to "subcontract all of the actual work required by a solicitation so long as the firm calls itself a 'broker' rather than a 'prime contractor', even if the firm 'brokers' 100% of [the contract]" (Hardie's Size Protest, pg. 5), that contention finds no support in law. The non-manufacturer rule does permit such a scenario. For example, if a supply contract required nothing more than simple delivery of a product for which the small business qualified as a non-manufacturer, or for which a waiver was granted, the contractor would be authorized to simply deliver the products of another small business or, in the case of a waiver, products of a large business. Nothing in the statute or regulations suggests that this outcome would be improper, which is the precise situation that Hardie's finds objectionable. In fact, the very definition of a non-manufacturer includes a requirement that the concern be "primarily engaged in the retail or wholesale trade and normally sells the type of item being supplied." 13 C.F.R. § 121.406(b). The exemption for non-manufacturers from the manufacturing subcontracting limitation was promulgated in 1996. In the final rule, SBA stated:

> One commenter asked why proposed § 125.6(a0(2), which establishes a 50% performance of work requirement for contractors for supplies (other than from a regular dealer in such supplies) establishes no performance or work requirement for regular dealers. SBA believes that the statute imposes no requirement on regular dealers to perform any percentage of the work.

61 Fed. Reg. 3310, 3311 (1996).

Hardie's impermissibly contends that the sub-contracting limitations for services contracts should be applied to the services portion of this solicitation. Two years ago, when the solicitation was issued, Hardie's or any other interested party could have protested the contract

classification, NAICS code designation and application of the non-manufacturer rule. However, this was never done. Indeed, the parties—Hardie's, M&S, DSCP and SBA—treated the procurement as a supply contract to which a waiver of the non-manufacturer rule had been obtained. To allow the application of the subcontracting limitations for a services contract, or to analyze in any way the contractor's performance under the ostensible subcontractor rule, as Hardie's contends, would be allowing an end-run around the regulatory time frames for challenging and adjudicating procurement classifications and NAICS code designations.

## III. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

### A. Standard For Obtaining Injunctive Relief

In deciding whether a permanent injunction should issue, the Court considers "(1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n. 12 (1987)).

Because "injunctive relief is so drastic in nature, a plaintiff must demonstrate that its right to such relief is clear." EP Productions, Inc. v. United States, 63 Fed. Cl. 220, 224 (2005). That is, plaintiff must demonstrate its right to injunctive relief by clear and convincing evidence. KSEND v. United States, 69 Fed. Cl. 103, 112 (2005), aff'd, 184 Fed. Appx. 956 (Fed. Cir. 2006).

### B. Success On The Merits

As demonstrated above, Hardie's has not shown that the Government's actions were arbitrary, capricious, or otherwise not in accordance with applicable statutes and regulations. Accordingly, Hardie's is not entitled to an injunction because it cannot succeed on the merits.

### C. Irreparable Harm And Balance Of Harms

Hardie's cannot demonstrate that it will suffer irreparable harm. In its complaint, Hardie's does not allege how it will suffer irreparable harm. Generally, economic loss does not constitute irreparable harm:

> Only economic loss that threatens the survival of a movant's business constitutes irreparable harm. . . . The plaintiffs do not claim that they will be destroyed if they do not obtain an injunction. Rather, they merely claim that they risk losing a valuable contract and some of their employees. This is insufficient.

Foundation Health Fed'l Servs. v. United States, No. 93-1717, 1993 WL 738426, at *3 (D.D.C. 1993) (quoting Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985)) (additional citation omitted); see also Minor Metals, Inc. v. United States, 38 Fed. Cl. 379, 381-82 (1997) ("However, economic harm, without more, does not seem to rise to the level of irreparable injury.") (citing Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983)).

Here, Hardie's has alleged that it will lose profits under the Solicitation, but, even if it did, loss of profits is the same claim that can be advanced by every single disappointed bidder for a Government contract every time a competitor receives a contract award. That does not rise to the level of irreparable harm. Nor has Hardie's alleged that any loss will threaten the survival of

Hardie's business. Hardie's has not shown that it will suffer irreparable harm if a permanent injunction is not issued.

In stark contrast to Hardie's, DSCP will suffer severe harm if the Solicitation does not proceed. A major component of the San Antonio zone contract involves providing FF&V to over 800 schools. Following the closure of DSCP field offices in March 2008, DSCP has been compelled to transfer personnel from other districts that have little or no experience managing the FF&V mission. With schools mainly closed during the summer months, DSCP has been able to provide FF&V to the zone using blanket purchase agreements and a short handed crew. Once the school year commences during the next few weeks, DSCP will be compromised in its ability to provide FF&V. As a result, schools may have to dip into their own budgets to procure FF&V for students. Thus, the extra costs will be incurred by both DSCP and the public schools in San Antonio.

**D. Public Interest**

The FF&V mission is essential and time-sensitive. The mission ensures that students and military personnel receive FF&V in a timely and economic fashion. It is in the public interest that this work should continue as scheduled so as not to deprive students and military personnel of affordable FF&V.

This Court has also recognized the strong public interest in not interfering with the procurement process of Government agencies. See LABAT-Anderson, Inc. v. United States, 65 Fed. Cl. 570, 581 (2005) (public interest is not served by interfering with procurement process so long as the agency did not violate applicable laws and regulations); JDL Constr., Inc., v. United States, 14 Cl. Ct. 825, 829 (1988) (judicial intervention in the contract procurement and administration process is a drastic and extraordinary remedy). In addition, the public has an

interest in "minimizing the costs of federal procurements." Vanguard Sec. Inc. v. United States, 20 Cl. Ct. 90, 113 (1990). Under its anticipated procurement, as discussed above, DSCP will obtain the required FF&V at the lowest cost to the Government.

In short, given Hardie's inability to demonstrate success on the merit, the lack of harm to Hardie's, the severe harm to the Government, and the public interest in insuring that the Solicitation proceeds, Hardie's has not and cannot show by clear and convincing evidence that the Court should take the extraordinary step of awarding injunctive relief.

## CONCLUSION

For the foregoing reasons, judgment on the complaint and administrative record should be granted to the Government, and the SBA's size determination should be affirmed.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Martin F. Hockey by Donald E. Kinner
MARTIN F. HOCKEY
Assistant Director

OF COUNSEL:
BEVERLEY HAZLEWOOD LEWIS
Office of General Counsel
Small Business Administration
409 Third Street, S.W., Suite 7200
Washington D.C. 20415

s/ David M. Hibey
DAVID M. HIBEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 307-0163
Fax: (202) 305-7643

Dated: August 22, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on this 22nd day of August, 2008, a copy of the foregoing "DEFENDANT'S MOTION FOR JUDGMENT ON THE COMPLAINTAND UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/David M. Hibey