# EXHIBIT A

**SIZE DETERMINATION MEMORANDUM**
**FILE NUMBER 3-2008-71 (REMAND)**

**PROTESTED CONCERN:** M&S Foods Ltd. Co. (M&S), Newberry, FL

**PROCUREMENT:** SPM300-06-R-0008, Oklahoma/Texas Panhandle Zone

**PROCURING AGENCY:** Defense Logistics Agency, Defense Supply Center-Philadelphia (DLA)

**NAICS CODE:** 111998, All Other Crop Farming (supplied by SBA, see analysis below)

**SIZE STANDARD:** $750,000 (500 employees for nonmanufacturers, see analysis below)

**INTRODUCTION AND HISTORY:** On July 24, 2006, DLA issued the solicitation SPM300-06-R-0008 (the Solicitation) as a request for proposals on Standard Form 1449 (SF-1449), which is titled "Solicitation/Contract/Order for Commercial Items." The Solicitation is a 100% small-business set-aside. The purpose of the Solicitation is to provide a full line of fresh fruit and vegetable support to Department of Defense (DOD) and non-DOD activities located throughout the United States. DLA broke down the Solicitation into 12 regions and 43 zones, and stated in the Solicitation that it intended to make one award per zone. DLA set initial offer due dates based on zone.

DLA's initial SF-1449 did not provide a NAICS code for the Solicitation, nor did any of the subsequent 13 amendments to the Solicitation. Instead, in box 10 in the initial SF-1449, DLA stated that the NAICS code was "NonMFG" and set a size standard of 500. On page 8 of the Solicitation, DLA clarified that "The U.S. Small Business Administration issued a waiver of the Nonmanufacturer Rule thereby allowing small business receiving the award under a small-business set-aside to procure products from large businesses." The waiver of the nonmanufacture rule that the SF-1449 refers to was granted by SBA's Associate Administrator for Government Contracting (AA/GC) on March 16, 2006.

DLA set the initial offer due date for the Oklahoma/Texas Panhandle zone for October 12, 2006. On April 29, 2008, DLA notified Tulsa that M&S was the apparent successful offeror for the Oklahoma/Texas Panhandle zone.

On May 1, 2008, Tulsa filed a size protest with DLA's contracting officer (CO). Tulsa asserted that Fresh Point is an ostensible subcontractor to M&S for the Solicitation, as defined by 13 C.F.R. § 124.103(h)(4). According to Tulsa, Fresh Point is a wholly-owned subsidiary of Sysco Corporation (Sysco). Because Fresh Point will perform "virtually all primary and vital requirements of the contract," Tulsa claims Fresh Point

should be found to be M&S's ostensible subcontractor. Where SBA identifies an ostensible subcontractor, the subcontractor and prime contractor are treated as joint venturers, and therefore affiliates, for size purposes.

After collecting evidence from M&S and DLA, which is described below, the Area Office issued its initial size determination for the Oklahoma/Texas Panhandle zone portion of the Solicitation on June 6, 2008 in Size Determination 3-2008-42. The determination found M&S to be affiliated under the ostensible subcontractor rule with Thomas Brothers FreshPoint, Inc. (Thomas Brothers), a subsidiary of Fresh Point, Inc., which is in turn owned by Sysco. Because of this affiliation, the Area Office found M&S to be other than a small businesses for the Solicitation under a size standard of 500 employees. On June 20, 2008, M&S appealed the Area Office's Size Determination 3-2008-42 to SBA's Office of Hearings and Appeals (OHA). M&S asked OHA to overturn the initial determination and find M&S to be a small business for the Solicitation.

On July 14, 2008, OHA issued a decision concerning the Area Office's size determination in a size protest brought by Hardie's Fruit & Vegetable Co., Inc. (Hardie's) against M&S. *See Size Appeal of M&S Foods Ltd. Co*, SBA No. SIZ-4971 (2008) (hereinafter referred to as *M&S/Hardie's*). Hardie's had protested DLA's selection of M&S as the apparent successful offeror for the San Antonio zone under the Solicitation. Hardie's alleged that M&S was affiliated under the ostensible subcontractor rule with Fresh Point-City Produce LP (City), which also is a subsidiary of Fresh Point, Inc. The Area Office found M&S and City to be affiliated under the ostensible subcontractor rule as applied to the San Antonio zone portion of the Solicitation. OHA's decision in *M&S/Hardie's* reversed the Area Office's size determination and concluded that M&S is a small business for the San Antonio zone. Hardie's appealed OHA's decision to the U.S. Court of Federal Claims.

On August 8, 2008, OHA issued a Request for Agency Comments to SBA's Office of General Counsel with regard to M&S's appeal of Size Determination 3-2008-42, concerning Tulsa's protest. OHA explained that *M&S/Hardie's* had involved an identical appeal for the Solicitation, but in a different zone. OHA requested that the Office of General Counsel comment on issues presented by M&S in its appeal from Size Determination 3-2008-42.

On August 15, 2008, the Agency requested that OHA remand Size Determination 3-2008-42 to the Area Office. SBA explained that a remand would permit the Area Office to issue a new size determination that is consistent with currently applicable law.

On August 25, 2008, OHA granted the Agency Motion to Remand. OHA's Order Remanding Proceeding vacated Size Determination 3-2008-42. OHA ordered the Area Office to issue a new size determination in this matter consistent with the decision in *M&S/Hardie's*.

**EVIDENCE:** The Area Office reviewed the following materials for its initial Size Determination 3-2008-42: the Solicitation and relevant amendments; the March 16, 2006

waiver of the nonmanufacturer rule by the AA/GC; M&S's offer and related document submissions to DLA for the Oklahoma/Texas Panhandle zone portion of the Solicitation; and M&S's responses to the Area Office on SBA Form 355 and other submissions by M&S to the Area Office. A teaming agreement between Thomas Brothers and M&S was among the materials the Area Office reviewed.

For this remand determination, the Area Office also reviewed DLA's request to the AA/GC for waiver of the nonmanufacturer rule.

According to M&S's SBA Form 355, M&S is 100% owned by Tyrone C. Walker, who is the firm's president. The company has three full-time employees and four part-time employees. It has no acknowledged affiliates.

**PROTEST ISSUES:** The threshold issue that the Area Office will resolve is what NAICS code applies to the Solicitation. SBA's regulations state that the procuring agency contracting officer designates the NAICS code that best describes the principal purpose of the product being acquired in light of the industry description in the *NAICS Manual*, the description in the solicitation, and the relative weight of each element in the solicitation. 13 C.F.R. § 121.402(b). A procurement is usually classified according to the component which accounts for the greatest percent of contract value. *Id.* Procurements for supplies must be classified under the appropriate manufacturing NAICS code, not under the wholesale trade NAICS code. *Id.* An unclear, incomplete or missing NAICS code designation or size standard in the solicitation may be clarified, completed or supplied by SBA in connection with a formal size determination or size appeal. 13 C.F.R. § 121.402(d).

Next, the Area Office will determine how the nonmanufacturer rule and the AA/GC's waiver of the rule apply to this procurement. *See* 15 U.S.C. § 637(a)(17); 13 C.F.R. § 121.406. If the nonmanufacturer rule applies, the Area Office will verify whether M&S qualifies as a nonmanufacturer for the Solicitation.

Finally, the Area Office will determine how the ostensible contractor rule, 13 C.F.R. § 121.103(h)(3), applies to this procurement.

In resolving these issues, the Area Office must follow the reasoning and interpretation of law set forth in OHA's decision *M&S/Hardie's*. Significantly, OHA found that the Area Office committed clear error by attempting to constrain SBA's waiver of the nonmanufacturer rule specifically granted for the Solicitation, and thus finding M&S to be other than small due to unusual reliance on a subcontractor. *See M&S/Hardie's*, at 6. In clear terms, OHA held that "if the analysis in the size determination underlying this appeal is adhered to, the nonmanufacturer rule waiver granted for this procurement would not serve its intended purpose." *See id.* Accordingly, OHA concluded that because SBA issued an individual waiver of the nonmanufacturer rule, the Area Office committed clear error of law when it determined M&S to be unusually reliant upon its subcontractor and thus affiliated with the subcontractor under the ostensible subcontractor rule. *See id.*

**ANALYSIS:**

I. What NAICS code applies to the Solicitation?

The threshold issue that the Area Office must resolve is what NAICS code applies to the Solicitation. DLA's initial SF-1449 did not provide a NAICS code for the Solicitation, nor did any of the subsequent 13 amendments to the Solicitation. Instead, in box 10 in the initial SF-1449, DLA stated that the NAICS code was "NonMFG" and that the size standard was 500.

SBA's regulations state that an unclear, incomplete or missing NAICS code designation or size standard in the solicitation may be clarified, completed or supplied by SBA in connection with a formal size determination or size appeal. 13 C.F.R. § 121.402(d). Because OHA has vacated Size Determination 3-2008-42 and did not itself specify a NAICS code for this appeal, SBA has not yet clarified, completed or supplied a NAICS code for this size determination or the appeal preceding it.[1]

In supplying a NAICS code for this solicitation, the Area Office considers that SBA's regulations direct the procuring agency contracting officer to designate the NAICS code that best describes the principal purpose of the product being acquired in light of the industry description in the NAICS Manual, the description in the solicitation, and the relative weight of each element in the solicitation. 13 C.F.R. § 121.402(b). A procurement is usually classified according to the component which accounts for the greatest percent of contract value. *Id.*

Thus, SBA's regulations recognize that NAICS code issues generally are best left to the judgments of the procuring agency, which is in the best position to determine which component accounts for the greatest percent of contract value. In this case, although DLA did not specify a NAICS code in the Solicitation, DLA cited NAICS codes in its request for a waiver of the nonmanufacturer rule. A February 28, 2006 memorandum by Contracting Officer Steve Merch stated, "The NAICS code is 424480, Fresh Fruit and Vegetables Merchant Wholesalers, with a size standard of 500 employees. The NAICS sub sector code for Crop Production is 111, with a size standard of $750,000. The sub sector code applies to all vendors at the grower level."

---

[1] Although the Area Office supplied a NAICS code in the size determination at issue in *M&S/Hardie's*, that determination was reversed by OHA and thus cannot be precedent for this determination.

Additionally, OHA's statement in *M&S/Hardie's* concerning the NAICS code for this solicitation did not supply a code for the appeal pursuant to 13 C.F.R. § 121.402(d). OHA stated in the "Background" portion of the *M&S/Hardie's* decision that "the Contracting Officer (CO) . . . assigned North American Industry Classification System (NAICS) code 424480, Fresh Fruit and Vegetables Wholesalers, with a corresponding 500 employee size standard." *M&S/Hardie's*, at 2. This statement is incorrect, as the CO did not assign a NAICS code to the Solicitation.

The Area Office also understands that NAICS code 424480 may have been assigned to past DLA procurements similar to this one. However, SBA is not bound by a NAICS code assigned to a prior solicitation. *See NAICS Appeal of Master Key Resources, LLC*, SBA No. NAICS-4862 (2007).

The Area Office will discuss the CO's statements in turn. First, NAICS code 424480 is an impermissible NAICS code for this procurement because it contravenes the requirement in SBA's regulations that "[p]rocurements for supplies must be classified under the appropriate manufacturing NAICS code, *not under the wholesale trade NAICS code*." 13.C.F.R § 121.402(b) (emphasis added). The procurement at issue here is a procurement for supplies. This is evidenced by the first sentence in the Solicitation's Statement of Work, "The Defense Supply Center Philadelphia (DSCP) intends to enter into Long-Term contracts with commercial firms to *supply* a full line of USDA No.1 or better Fresh Fruit and Vegetable (FF&V) products . . . ." (emphasis added). The CO also requested from SBA a waiver of the nonmanufacturer rule, which applies only to a "procurement contract for the *supply of a product*." *See* 15 U.S.C. § 637(a)(17)(A) (emphasis added).

Because the procurement is for supplies, 13 C.F.R. § 121.402(b) prohibits SBA from designating a wholesale trade NAICS code, such as 424480. Instead, the Area Office must examine alternative NAICS codes that best describe the "principal purpose of the product being acquired in light of the industry description in the NAICS Manual." 13 C.F.R. § 121.402(b).

In examining alternative NAICS codes, the Area Office starts with the CO's statement in its request for waiver of the nonmanufacturer rule, "The NAICS sub sector code for Crop Production is 111, with a size standard of $750,000. The sub sector code applies to all vendors at the grower level." Through this statement, the CO indicated that a NAICS code within subsector 111 best describes the principal purpose of the product being acquired in this procurement.

A review of the NAICS Manual and the Solicitation confirms that a crop production, subsector 111 NAICS code is appropriate for this procurement. *See* 13 C.F.R. § 121.402(b) (granting primary consideration to, among other things, the industry descriptions in the NAICS United States Manual, and the product or service description in the solicitation). The NAICS Manual defines subsector 111 as follows,

> Industries in the Crop Production subsector grow crops mainly for food and fiber. The subsector comprises establishments, such as farms, orchards, groves, greenhouses, and nurseries, primarily engaged in growing crops, plants, vines, or trees and their seeds.

*NAICS Manual*, available at http://www.census.gov/naics/2007/def/NDEF111.HTM#N111. Consistent with this subsector definition, the Solicitation described the supplies being acquired as "a full line of USDA No.1 or better Fresh Fruit and Vegetable (FF&V) products. . . ." To that end, the vendor is required to provide DLA with a catalog of fresh fruits and vegetables, and add additional fruits or vegetables to its catalog if DLA requests. *See* Solicitation at 10. Thus, a crop production NAICS code best describes the products being acquired by DLA.

Among the NAICS codes in subsector 111, selecting a single code is a difficult task because of the lack of specificity in what crops DLA intends to acquire. The procurement is an indefinite quantity contract for a large variety (*i.e.*, a "full line") of fresh fruits and vegetables. To rate offerors' business proposals, DLA selected a "market basket" of items. The market basket for the Oklahoma/Texas Panhandle Zone has 52 separate fresh fruits and vegetables. DLA advised that the estimated quantities for the market basket "are for information and evaluation purposes only."

The Area Office has reviewed the market basket for the Oklahoma/Texas Panhandle Zone because it is the only indication of which component or components will account for the greatest percentage of the contract value. Mindful that all codes in subsector 111 carry the same $750,000 size standard, the Area Office has concluded that no single fruit or vegetable, or category of fruits or vegetables, accounts for a large percentage of the market basket. Thus, the Area Office selects NAICS code 111998, All Other Miscellaneous Crop Farming, based on the NAICS Manual's description of this code as including, "establishments primarily engaged in . . . growing a combination of crops . . . with no one crop or family of crop(s) accounting for one-half of the establishment's agricultural production . . . ." *NAICS Manual*, available at http://www.census.gov/naics/2007/def/NDEF111.HTM#N11199. A revenue-based size standard of $750,000 applies to NAICS code 111998, and thus applies to this procurement, subject to application of the nonmanufacturer rule.

II. <u>How does the Nonmanufacturer Rule and Waiver of the Nonmanufacturer Rule Apply to this procurement?</u>

Consistent with OHA's decision in *M&S/Hardie's*, the Area Office now must apply the nonmanufacturer rule and the AA/GC's waiver of the nonmanufacturer rule to this procurement to determine whether M&S is an eligible offeror.

SBA's nonmanufacturer rule has both a statutory component, found at 15 U.S.C. § 637(a)(17), and a regulatory component, found at 13 C.F.R. § 121.406. The rule, 13 C.F.R. § 121.406(b), allows a small business to provide goods under a manufacturing contract if: (1) it has less than 500 employees; (2) is primarily engaged in wholesale or retail trade; and (3) provides the end item of a small business manufacturer or processor.[2] However, when no small business can provide a product meeting the specifications of a solicitation, the AA/GC can grant an individual waiver of the nonmanufacturer rule. The waiver allows a small business to be compliant without providing the end item of a small business manufacturer or processor.

The AA/GC's waiver of the nonmanufacturer rule allows M&S to be compliant without satisfying the third element of the rule, that it must provide the end item of a small business. *See* 13 C.F.R. § 121.406(a)(3) (stating that a waiver of the nonmanufacturer rule has the effect of waiving the third requirement). The AA/GC granted the waiver based on her conclusion that "there are no known small business manufacturers that can

---

[2] The statute provides that the nonmanufacturer rule applies to "any procurement contract for the supply of a product." 15 U.S.C. § 637(a)(17)(A).

supply the depth and breadth of products required by the Government." Thus, M&S may qualify as a nonmanufacturer for the procurement by satisfying two requirements: (1) having 500 or fewer employees, and (2) being primarily engaged in the retail or wholesale trade and normally selling the type of item being supplied.

The Area Office concludes that M&S has 500 or fewer employees. M&S certified on its Form 355 that it has three full-time and four part-time employees. Further, as discussed in the section below, Thomas Brothers' employees are not attributed to M&S for the purpose of applying the nonmanufacturer rule under these facts.

The Area Office also concludes that M&S is primarily engaged in the wholesale trade and normally sells the items being supplied. The Administrative Record in this matter includes copies of licenses granted to M&S by the U.S. Department of Agriculture, Agricultural Marketing Service, Fruit & Vegetable Programs, P.A.C.A. Branch (USDA). M&S states that it has held USDA licenses for over seven years. The licenses certify M&S as a "wholesale dealer" of "both fresh & frozen" fruits and vegetables. Although USDA's regulations do not define a "wholesaler dealer," the regulations define a dealer as "any person engaged in the business of buying or selling in wholesale or jobbing quantities in commerce . . . ." 7 C.F.R. § 46.2(m). Consequently, USDA's grant of a license to M&S confirms M&S's engagement in the wholesale trade of fresh and frozen fruits and vegetables.

In addition, M&S submitted past performance information to DLA that demonstrated performance on multiple fresh produce supply contracts. M&S has a substantial number of active accounts and prime vendor accounts. Based on this evidence and USDA's licensing of M&S, it is clear that M&S is primarily engaged in wholesale trade of fresh fruits and vegetables.

Because M&S satisfies both prongs of the nonmanufacturer rule that apply to this procurement, M&S is qualified to provide the products being acquired as a nonmanufacturer. *See* 15 U.S.C. § 637(a)(17);13 C.F.R. § 121.406(b).

III. How does the Ostensible Subcontractor Rule Apply to This Procurement?

Lastly, the Area Office must resolve Tulsa's protest by determining how the ostensible subcontractor rule applies to this procurement.[3] In *M&S/Hardie's*, OHA held that because SBA had issued a waiver of the nonmanufacturer rule, "the Area Office committed a clear error of law when it determined Appellant was unusually reliant upon City and thus affiliated with them under the ostensible subcontractor rule." *M&S/Hardie's*, at 6.

[3] Tulsa also briefly alleged that Fresh Point has negative control over M&S. *See* Protest at 11. However, Tulsa provided no proof, outside of its claims concerning the ostensible subcontractor rule, to support its allegation. Identification of the kind of power that constitutes negative control has been the subject of development over many years by OHA. *Size Appeal of EA Engineering, Science, and Technology, Inc.*, SBA No. SIZ-4973, at 9 (2008). Tulsa did not cite any OHA cases to support its position that negative control can be established from a contract-specific relationship, and the Area Office is not aware of any such cases.

How the ostensible subcontractor rule applies to this procurement turns on the interaction of multiple elements in SBA's regulations governing small business procurements. The assignment of a NAICS code dictates what an offeror must do in order to qualify as a small business for the procurement. A procurement must generally be assigned the single NAICS code that best describes the principal purpose of the acquisition. 13 C.F.R. § 121.402.

Different prime contractor performance requirements apply depending on the type of contract. If the procurement is classified as a supply contract, the concern must "perform work for at least 50 percent of the cost of manufacturing the supplies (not including the costs of materials)." 15 U.S.C. § 644(o)(1)(B). In contrast, if the procurement is classified as a services contract, "at least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern." 15 U.S.C. § 644(o)(1)(A). A supply contract may have a service component, but no law or regulation requires the contractor to perform any services under the supply contract. For a supply contract, the Small Business Act and its implementing regulations only require the contractor to perform work for at least 50 percent of the cost of manufacturing the supplies, not including the cost of materials (or qualify as a nonmanufacturer). *See* 13 C.F.R. § 125.6(a)(2). Likewise, a contractor may have to provide some items under a service contract, but no law or regulation require the contractor to manufacture the items to be supplied under the service contract. For a services contract, the Small Business Act and its implementing regulations require the contractor to incur at least 50 percent of the cost of contract performance incurred for personnel for its own employees. *See* 13 C.F.R. § 125.6(a)(1).

The assignment of a manufacturing NAICS code to a procurement means that the principal purpose of the contract is the acquisition of supplies, and the offeror must perform at least 50 percent of the cost of manufacturing the supplies, unless the offeror qualifies as a non-manufacturer. As discussed in the prior section, the offeror can qualify as a nonmanufacturer if, among other things, it supplies a product manufactured by a small business in the United States or a waiver has been granted. There is no law or regulation that provides that a nonmanufacturer must provide any portion of services in order to qualify as a small business under a small business set-aside supply contract. *See* 61 Fed. Reg. 3310, 3311 (1996). In accordance with the rules applicable to manufacturers under a supply contract, performance of any tangential services is irrelevant to a supply contract. Thus, a concern that qualifies as a nonmanufacturer need not manufacture the item to be supplied, nor does it have to perform any tangential services. A waiver is only relevant for purposes of determining whether the offeror must supply the product of a small business made in the United States or whether the offeror can supply the product of any size business made anywhere. Thus, the waiver to the nonmanufacturer rule does not apply to the service portion of a supply contract because the service portion of the contract is not relevant or considered. By definition, the services under a supply contract are not primary and vital requirements of the contract, because if they were, the contract would be classified under a services NAICS code, with a different size standard and different performance requirements applicable to service

contracts. Thus, a concern that submits an offer on a supply contract where a waiver from the nonmanufacturer rule has been granted may qualify as a small business without manufacturing the item, without supplying an item manufactured by a small business and without performing any services.

Under the ostensible subcontractor rule, an offeror may be found to be affiliated with a subcontractor and treated as a joint venture if the subcontractor will perform "primary and vital" requirements of the contract. 13 C.F.R. § 121.103(h)(4). Here, Tulsa alleges that M&S is affiliated with a large business under the ostensible subcontractor rule because M&S is unduly reliant on subcontractors to deliver the supplies. Tulsa alleges that M&S does not own warehouse storage facilities, distribution facilities or any distribution vehicles. However, these services are not the primary and vital requirements of the contract. The primary and vital requirements of DLA's procurement are the fruits and vegetables, *i.e.*, crop production. If the primary and vital requirements of the procurement were warehousing or delivery, the procurement would have a services NAICS code, such as NAICS 115114 "Postharvest Crop Activities (except Cotton Ginning)", NAICS 493130 "Farm Product Warehousing and Storage," or NAICS 484220 "Specialized Freight (except Used Goods) Trucking, Local." If DLA's procurement was a procurement for services a different size standard based on annual revenue would apply to the procurement, different performance requirements would apply to the procurement, and the non-manufacturer rule would not apply, since the non-manufacturer rule only applies to supply contracts. Thus, if M&S grew all of products to be supplied, and subcontracted warehousing and delivery, there is no question that M&S would qualify as a small business under the supply contract, because M&S would be "manufacturing" the items to be supplied. Further, if a waiver had not been granted, M&S could have qualified as a small business without growing the crops or providing any delivery or warehousing services, if it met the requirements of the nonmanufacturer rule, including supplying the product of a small business made in the United States. Because a waiver has been granted for this procurement, M&S can qualify as a small business without growing or manufacturing the crops, without supplying the product of a small business made in the United States, and without performing any services under contract. Tulsa's allegations concerning performance of the service portion of the contract would certainly be relevant if DLA's procurement was a procurement for services, but it is not.

Accordingly, the Area Office concludes that M&S and Thomas Brothers are not affiliated based on an ostensible subcontractor relationship.

**CONCLUSION:** The NAICS code that applies to this procurement is 111998, with a size standard of $750,000. However, because the AA/GC granted a waiver of the nonmanufacturer rule for this procurement, otherwise qualified nonmanufacturers may supply the end item of any business, not only those that are small under this size standard.

SBA finds that M&S is a qualified nonmanufacturer for this procurement because it has fewer than 500 employees and is primarily engaged in the wholesale trade of the items being supplied. Thus, M&S is an eligible offeror for this 100% small-business set-aside procurement.

This determination is effective immediately and remains in full force unless and until reversed by the Office of Hearings and Appeals. Any person adversely affected by this decision has the right to file an appeal petition with SBA's Office of Hearings and Appeals (OHA).

Mary E. Harrison for
Mitchell Morand
Area Director

Date Decided: 9/12/08

PJM | CIA / KEB

2238

U. S. Small Business Administration
Office of Government Contracting—Area III
233 Peachtree St. N.E., Suite 1805
Atlanta, Georgia 30303-1508
Phone (404) 331-7587 Fax (404) 331-2956

**VIA FACSIMILE: (352) 331-8958**

September 12, 2008

Mr. Tyrone C. Walker, President
M&S Foods Ltd. Co.
13728 SW 1st Lane
Newberry, FL 32669-3015

Subject: Size Determination Case #3-2008- 71 (REMAND)
Protested Requirement: SPM300-06-R-0008, Oklahoma/Texas Panhandle Zone
NAICS Code: 111998, All Other Crop Farming
Size Standard: $750,000 (500 employees for nonmanufacturers)

Dear Mr. Walker:

The Small Business Administration (SBA) has made a formal size determination that your firm is a small business for the above cited procurement. Enclosed is a copy of that determination.

Any person adversely affected by this decision may appeal to SBA's Office of Hearings and Appeals (OHA). The appeal petition must be filed with OHA at the following address:

Office of Hearings and Appeals
Small Business Administration
409 3rd Street, S.W.
Washington, DC 20416

Fax# 202 205-7059

The appeal petition must include the following information: the Area Office which issued the size determination; the solicitation or contract number; name, address and telephone number of the contracting officer; the date of receipt of the size determination; a full and specific statement as to why the size determination is alleged to be in error, together with argument supporting such allegations; and the name, address, telephone number and signature of the appellant or its attorney. 13 CFR sec. 134.305(a).

All filings must be by personal delivery, express mail, facsimile transmission, or commercial delivery service. If filing by personal delivery or commercial delivery service, such filing must be accomplished between the hours of 8:30 a.m. and 5:00 p.m. EST. 13 CFR sec. 134.204(b).

If filing or service is made by facsimile transmission, the date of service or filing is the date of transmission. If filing or service is made by personal delivery, express mail, or commercial delivery service, the date of service or filing is the date of receipt. 13 CFR sec. 134.204(e). Each party is responsible for the service of its pleadings and other submissions. Unless otherwise ordered by the OHA Judge, service is made by providing each party, or its attorney, with a copy of the appeal petition by personal delivery, express mail, facsimile transmission, or commercial delivery service. 13 CFR sec. 134.204(a).

The appeal petition must be served upon the following: the SBA official who issued the size determination; the contracting officer responsible for the procurement affected by the size determination; the business concern whose size status is at issue; all persons who filed protests; and SBA's Office of General Counsel. (Fax# 202 205-6846); SBA's Associate General Counsel for Procurement Law (Fax# 202 205-6873). 13 CFR sec. 134.305(b).

(1) If the appeal is from a size determination in a pending procurement, the appeal petition must be served and filed within 15 days after service of the size determination. (2) If the appeal is from a size determination other than one in a pending procurement, the appeal petition must be filed within 30 days after date of receipt of the size determination.13 CFR sec. 134.304.

The appellant must attach to the appeal petition a signed certificate identifying each person or governmental agency which was served with the notice of appeal, and how and when each of those persons or governmental agencies was served.

The SBA size regulations are available over the Internet under Title 13, Part 121 (Size Regulations) athttp://www.access.gpo.gov/nara/cfr/waisidx_05/13cfr121_05.html, and Part 134 (Size Appeals Regulations) of the Code of Federal Regulations http://www.access.gpo.gov/nara/cfr/waisidx_05/13cfr134_05.html. Size appeals not meeting requirements set forth under Part 134 may be dismissed.

If additional information or assistance is needed, please contact Ivette Mesa Bascumbe at (404) 331-7587 X 209. Further guidance and information on the Size Program may be obtained by contacting our Size Home Page website at http://www.sba.gov/size.

Sincerely,

Ivette Mesa Bascumbe
General Business & Industry Specialist

CC: CC: VIA FACSIMILE: (215) 737-7166; Frank G. Holder, Contracting Officer, Defense Supply Center Philadelphia, Philadelphia, Pennsylvania; Genevieve Venturo, Small Business (215) 737-7116.

Piliero Mazza, Attorney at Law (202) 857-0200; Pamela J. Mazza

Protestor, Mr. Colby Johnson, Tulsa Fruit Company, Inc. (918) 584-8600; Bailey & Bailey, P.C., Attorney at Law (210) 225-8246; Johnathan M. Bailey