**U. S. Small Business Administration**
Office of Government Contracting—Area III
233 Peachtree St. N.E., Suite 1805
Atlanta, Georgia 30303-1508
Phone (404) 331-7587 Fax (404) 331-2956

**VIA FACSIMILE: (352) 331-8958**

June 6, 2008

Mr. Tyrone C. Walker, President
M&S Foods Ltd. Co.
13728 SW 1st Lane
Newberry, FL 32669-3015

Subject: Size Determination Case #3-2008- 42
Protested Requirement: SPM300-06-R-0008
NAICS Code: 424480
Size Standard: 500 employees

Dear Mr. Walker:

The Small Business Administration (SBA) has made a formal size determination that your firm is other than small for the captioned solicitation. Enclosed is a copy of that determination.

Section 16(d) of the Small Business Act, 15 USC 645(d), provides severe criminal penalties for knowingly misrepresenting the small business size status of a concern in connection with procurement programs. Under 13 C.F.R. Part 121.1009 (g) (3), a concern determined to be other than small for a particular size standard is ineligible for any procurement or assistance requiring the same or lower size standard, and may no longer self-certify as small under such size standard unless recertified as small by SBA pursuant to Part 121.1010. If the concern has already certified itself as small on a pending procurement or on another assistance application, the concern must immediately inform the officials responsible for the pending procurement or other requested assistance of the adverse size determination. This provision may not apply if the adverse decision specifically states that the negative determination is contract-specific, and applies only to one particular requirement.

Any person adversely affected by this decision may appeal to SBA's Office of Hearings and Appeals (OHA). The appeal petition must be filed with OHA at the following address:

Office of Hearings and Appeals
Small Business Administration
409 3rd Street, S.W.
Washington, DC 20416

The appeal petition must include the following information: the Area Office which issued the size determination; the solicitation or contract number; name, address and telephone number of the contracting officer; the date of receipt of the size determination; a full and specific statement as to why the size determination is alleged to be in error, together with argument supporting such allegations; and the name, address, telephone number and signature of the appellant or its attorney. 13 CFR sec. 134.305(a).

All filings must be by personal delivery, express mail, facsimile transmission, or commercial delivery service. If filing or service is made by facsimile transmission, the date of service or filing is the date of transmission. If filing or service is made by personal delivery, express mail, or commercial delivery service, the date of service or filing is the date of receipt. 13 CFR sec. 134.204(e). Each party is responsible for the service of its pleadings and other submissions. Unless otherwise ordered by the OHA Judge, service is made by providing each party, or its attorney, with a copy of the appeal petition by personal delivery, express mail, facsimile transmission, or commercial delivery service. 13 CFR sec. 134.204(a).

The appeal petition must be served upon the following: the SBA official who issued the size determination; the contracting officer responsible for the procurement affected by the size determination; the business concern whose size status is at issue; all persons who filed protests; and SBA's Office of General Counsel. 13 CFR sec. 134.305(b).

(1) If the appeal is from a size determination in a pending procurement, the appeal petition must be served and filed within 15 days after the date of receipt of the size determination. (2) If the appeal is from a size determination other than one in a pending procurement, the appeal petition must be served and filed within 30 days after the date of receipt of the size determination. 13 CFR sec. 134.304.

The appellant must attach to the appeal petition a signed certificate identifying each person or governmental agency which was served with the notice of appeal, and how and when each of those persons or governmental agencies was served. The SBA size regulations are available over the

Internet under Title 13, Part 121 (Size Regulations) at http://www.access.gpo.gov/nara/cfr/waisidx_05/13cfr121_05.html, and Part 134 (Size Appeals Regulations) of the Code of Federal Regulations http://www.access.gpo.gov/nara/cfr/waisidx_05/13cfr134_05.html. Size appeals not meeting requirements set forth under Part 134 may be dismissed.

If additional information or assistance is needed, please contact Ivette Mesa Bascumbe at (404) 331-7587 X 209. Further guidance and information on the Size Program may be obtained by contacting our Size Home Page website at http://www.sba.gov/size.

Sincerely,

Ivette Mesa Bascumbe
General Business & Industry Specialist

CC: VIA FACSIMILE: (215) 737-7166; Frank G. Holder, Contracting Officer, Defense Supply Center Philadelphia, Philadelphia, Pennsylvania; Genevieve Venturo, Small Business (215) 737-7116.

Piliero Mazza, Attorney at Law (202) 857-0200; Pamela J. Mazza

Protestor, Mr. Colby Johnson, Tulsa Fruit Company, Inc. (919) 584-8600; Bailey & Bailey, P.C., Attorney at Law (210) 225-8246; Johnathan M. Bailey

**SIZE DETERMINATION MEMORANDUM**
**FILE NUMBER 3-2008-42**

**PROTESTED CONCERN:** M&S Foods Ltd. Co. ("MS") Newberry, FL

**PROCUREMENT:** SPM300-06-R-0008 (Fresh Fruits and Vegetables support for DOD & Non DOD activities)

**NAICS CODE:** 424480

**SIZE STANDARD:** 500 employees

**INTRODUCTION:** On May 9, 2008, the Atlanta Area III SBA Government Contracting office received a request for size determination from the Defense Logistics agency, Defense Supply Center Philadelphia (DSCP), Associate Director of Small Business, Michael McCall and Genevieve Venturo (Small Business Specialist), point of contact. An unsuccessful offeror, Tulsa Fruit Company, Inc. (Tulsa), filed a protest alleging that M&S Foods Ltd. Co. (MS) was not a small business concern because it was unduly reliant on its proposed subcontractor, Fresh Point-Thomas Brothers Produce (Thomas), a subsidiary of Fresh Point, Inc., which is owned by Sysco Corporation. The protest alleges that MS was nonresponsive because MS does not own a warehouse or other produce storage facilities in the State of Texas or Oklahoma. "MS does not own any distribution facilities or vehicles in the State of Texas or Oklahoma. MS must rely entirely upon the supply and distribution capabilities of a subcontractor to perform this contract, as it only has at most the ability to process orders and billing with its own resources". The protest claims that MS must rely on Thomas, a large company to perform the weekly requirements dictated by this solicitation and therefore does not qualify as a small business.

On April 17, 2008 a Size Determination (3-2008-37) was made on MS on the above mentioned procurement for the same region, different zone. The first size determination was for the Texas zone and this new protest is for the zone in Oklahoma. SBA found that MS is unusually reliant on its subcontractor Fresh Point-City Produce, a subsidiary of Fresh Point, Inc. which is owned by Sysco Corporation and was found other than small for the referenced procurement with a size standard of 500 employees. On April 22, 2008, MS filed an appeal with the SBA Office of Hearings and Appeals (OHA), which is still pending.

Tulsa's protest was received within five business days after the protestor received notification of the successful offeror and as a result the protest was timely.

**EVIDENCE:** In response to the protest allegations, MS submitted

SBA Form 355, Application for Small Business Size Determination, and other information. According to SBA Form 355, MS is 100% owned by Tyrone C. Walker, President. There are 7 employees, 3 full time and 4 part time employees.

Protest Issues

The issues that Tulsa raised in its protest that may be reviewed by SBA in a size determination proceeding are whether MS will perform the primary and vital requirements of the contract, and whether MS is unusually reliant on Thomas for contract performance.

Analysis under Ostensible Subcontractor Rule

The issues in this case are whether MS's subcontractor, Thomas, will perform the primary and vital requirements of this contract and whether MS is unusually reliant on Thomas. If either of these conditions exists, the prime and its subcontractor should be treated as joint venturers, and therefore affiliates for size determination purposes.

In the teaming agreement dated October 6, 2006, reference is made to a company called Thomas Brothers Fresh Point, Inc., located at 3100 I-35 Service Road, Oklahoma City, OK 73111. MS is located at 13728 SW 1st Place, Newberry, Florida 32699. The teaming agreement is signed by Michael P. Thomas for Thomas and Ty Walker for MS.

13 CFR § 121.103(h) (4) How does SBA determine affiliation?

A contractor and its ostensible subcontractor are treated as joint venturers, and therefore affiliates, for size determination purposes. An ostensible subcontractor is a subcontractor that performs primary and vital requirements of a contract, or of an order under a multiple award schedule contract, or a subcontractor upon which the prime contractor is unusually reliant. All aspects of the relationship between the prime and subcontractor are considered, including, but not limited to, the terms of the proposal (such as contract management, technical responsibilities, and the percentage of subcontracted work), agreements between the prime and subcontractor (such as bonding assistance or the teaming agreement), and whether the subcontractor is the incumbent contractor and is ineligible to submit a proposal because it exceeds the applicable size standard for that solicitation.

The purpose of the rule is to prevent other than small businesses from forming relationships with small firms to evade SBA's size requirements. The ostensible subcontractor rule permits the SBA to determine that a subcontractor and a prime contractor have effectively formed a joint venture (and thus are affiliates) for determining size.

A prime contractor may subcontract a portion of the work without being regarded as a joint venture with its subcontractor, provided certain standards are met. MS addressed the seven factors test to address the issues of Thomas being an ostensible contractor. In *Size Appeal of D.P. Associates, Inc.*, SBA No. SIZ-2719 (1987) and *Size Appeal of Ideal Services*, SBA No. SIZ-3317 (1990) the seven factor test was used to evaluate unusual reliance.

1. Who will manage the contract: MS stated that they will ascertain the total tonnage of produce required to satisfy each order and a buying specialist will determine the lowest prices. The MS personnel then instruct Thomas to deliver the appropriate quantities to the ordering locations.

2. Which party possesses the requisite background and expertise necessary to carry out the contract: MS has over seven years of produce wholesaling. This service requires many hours of highly skilled, industry seasoned professionals performing services that involve commodity and market report review, produce tonnage spreadsheet creation and contacts for sourcing the best fruits and vegetables. MS has an excellent record with 99% of deliveries being on time.

3. Which party pursued the contract: MS attended three DSCP produce pre-solicitation meetings. MS stated that they are registered to receive notices through Fed Biz Opps.

4. What degree of collaboration was there in preparation and submission of the competitive proposal: MS stated they prepared the solicitation response, including product prices, fees and total unit prices. Thomas has little to no input in the process. The teaming agreement submitted for this solicitation states that MS shall have primary control over all prime contract proposal activities, subject to the mutual agreement of MS and Thomas. "MS shall take the lead in negotiating any resultant prime contract, subject to the review and approval by Thomas. Further MS shall, as Prime Contractor, retain primary control over and responsibility for prime contract performance, subject to review and approval by Thomas". In Section 2 of the Teaming Agreement it states, "Thomas shall have the right to assist in and to review and approve the activities undertaken by MS in connection with the preparation and submission of the proposal, and to participate and assist in discussions and negotiations with the Government leading to award of the prime contract".

5. Are there discrete tasks to be performed by each of the teaming partners or is there commingling of personnel and resources: MS stated that the teaming agreement proposed is a specific plan for the performance of the contract. The documentation provided shows Thomas will procure and deliver perishable products. MS submitted with the proposal in bold print, "MS will utilize Sysco as its supplier/shipper. MS is responsible for all accounts payables and receivables incurred in this solicitation."

6. What is the amount of work to be performed by each party: MS stated that a full time customer service representative will be responsible for supporting any needs and to resolve issues that may arise with regard

to this solicitation.

7. Which party will perform the more complex and costly contract functions: MS will be handling the day to day management of this solicitation. "Thomas has prime vendor and local accounts throughout the entire geographical area that encompasses South Central Region 8 Zone 2: Oklahoma and Texas Panhandle has two warehouses strategically located within zone 2 ensuring A.M. deliveries". Thomas has a fleet of 28 late model trucks of assorted sizes, on average 84% load capacity however additional trucks can be purchased or secured from sister operating companies if the need arises. "Thomas has a total of 49,000 square feet of warehouse space at place of performance locations any given time the current fresh fruits and vegetables (FFV) inventory can be tripled with racking systems and FFV product turns vastly increased."

In *Size Appeal of the Analysis Group*, SBA No. SIZ-4814 (2006), SBA's Office of Hearings and Appeals stated:

> The 'seven factors test' is an earlier way of encapsulating what has become the ostensible subcontractor rule codified in 13 CFR § 121.103(h) (4). These seven factors are now almost twenty years old; they are neither exclusive nor exhaustive, nor do they address 'all aspects' of the prime contractor/subcontractor relationship required by 13 CFR § 121.103(h) (4). Instead, the Area Office must, at a minimum, consider the aspects listed in 13 CFR § 121.103(h) (4) and should analyze factors outside of the seven factors if relevant. *See Size Appeal of FDR, Inc.*, SBA No. SIZ-4781 (2006); *Size Appeal of Taylor Consultants, Inc.*, SBA No. SIZ-4775 (2006). In their analyses, Area Offices may choose to concentrate on one factor if it is dominant or persuasive. See *Size Appeal of Ahuska Int'l Security Corp.*, SBA No. SIZ-4752 (2005). Therefore, while it is acceptable to consider the seven factors, the Area Office must evaluate 'all aspects' of the prime contractor/subcontractor relationship (or the totality of the circumstances) to determine if the ostensible subcontractor rule applies. See 13 CFR § 121.103(a) (5).

**DISCUSSION:** This procurement is a long term contract set aside for small business to provide a full line of fresh fruit and vegetable support for DOD and non DOD activities located throughout the United States. A waiver of the Nonmanufacturer Rule was granted on March 16, 2006, from the Small Business Administration in Washington, D.C. The waiver was for the purchase to cover the full line of various fresh fruits and vegetables under the above mentioned contract. It is noted that in accordance with 13

CFR § 121.402(d), NAICS code 424480 is the correct NAICS code for this procurement (Full Line Fresh Fruit and Vegetable). This waiver permits a qualified small business concern to purchase these products from a large business. See 13 CFR § 121.1201 to .1204.

This waiver does not relinquish the Prime contractor from performing the primary and vital requirements with its own employees. The waiver does not prevent us from determining if the ostensible subcontractor rule applies. See 13 CFR § 121.103(h) (4).

The NAICS code 424480 states Fresh Fruit and Vegetable Merchant Wholesalers. According to the NAICS definition, this industry comprises establishments primarily engaged in the merchant wholesale distribution of fresh fruits and vegetables. According to Webster's Dictionary a wholesaler is defined as a business that sells in large quantities to other businesses. According to the dictionary, to distribute is to divide, deliver or give out the fruits and vegetables.

The statement of work indicates that there are thirty five sections under requirements. However not all the sections delineate work requirements. For example, the first 11 sections are start up, ordering catalogs, catalog maintenance, discounts, defense appropriation act, customers, ordering systems, order placement and item availability. These items speak to how the government wants the contractor to set up the ordering system. The next four requirements seem to be the work requirement of packaging, delivery inspection and acceptance and returns. This work is being performed by Thomas. The next two items are the rejection return procedures instituted by DSCP and invoicing done by MS. The next five items are procedural requirements outlined for the benefit of the contractor: Price audits conducted by the government, fill rates, holidays, emergency orders, seasonal acquisition plan. The next ten items are work detailed being performed by Thomas: Contracting Quality Program, Warehousing, Product Sanitary, Contractor quality audits, recall procedures, pershisable agricultural commodities, non compete provision, force protection and surge mobilization. These requirements were approved for Thomas in several food and safety, sanitation and quality audit reports submitted with the proposals. The next requirement is being performed by MS, Management reports. The last three sections are information about the central contract, contractor's potential backup, National Allowance Program Agreement. Thus if we were to take a percentage of the amount of work being performed by MS when adding the work requirements 2 out of 35 is 6%. Thomas is performing 14 out of 35 which is 40% of the work. However, more importantly is outlining the primary and vital requirements.

In the Delivery Instructions of the solicitation Section XIII, vendors shall ensure all products are delivered in sanitary trucks. Products for

individual customers/dining facilities must be segregated. Many of the military bases have more than one delivery point. In general, each Troop customer receives three deliveries per week and each USDA customer receives one delivery per week. In section XI, Item Availability, vendors must have access to items in sufficient quantities to fill all ordering activity requirements. Section XII, Packaging, Packing, Labeling and Markings, all packaging and packing shall be in accordance with good commercial practice. Section XIV, Inspection and Acceptance, will be performed at destination. The proposal MS submitted under Place of Performance, offeror intends to use Thomas at three different locations; two are in OK and one in AR. The solicitation clearly outlines the technical factors are important. The technical proposal includes the Quality Assurance/Product Quality (Warehouse Quality, Inventory Turnover, Temperature & Humidity Controls, Past Performance and corporate experience, Distribution Plan and DLA Mentoring Business Agreements.)

Specifically, as defined in the technical factors, quality assurance is more important than past performance and therefore, the delivery and warehousing of the produce are the primary and vital requirements of this contract. MS states in the proposal that they are handling the day to day management of this solicitation. MS is responsible for all accounts payables and receivables incurred in this solicitation. However, without Thomas, MS would not have the ability to provide the produce, meet the required deliveries, warehouse the produce and provide cold and dry storage, label, package and distribute the produce in accordance with all food safety, sanitation and quality requirements.

Documentation provided to SBA clearly states that the primary and vital requirements of the contract – the wholesale distribution of fruits and vegetables – will be performed by Thomas, a company owned in part by Fresh Point, which is owned by Sysco, a large company (As stated throughout the Technical Proposal submitted by MS). The teaming agreement states that MS shall take the lead in negotiating... subject to review and approval by Thomas. Further MS shall, as Primary Contractor, retain primary control over and responsibility for prime contractor performance, subject to review and approval by Thomas. MS will submit a prime contract proposal and will be responsible for the final editing, printing and submittal of the necessary proposal documents to the government, all subject to review and approval by Thomas. In the teaming agreement statement of work, the security fence surrounding Thomas's facility is outlined, including but not limited to inspection at the dock door, refrigerated warehouse temperature sensors and any variation signals an alarm, and delivery vehicles are washed and the interior is pressured washed daily and pre-cooled prior to any loadings of products. MS clearly cannot perform any of the requirements of this procurement without Thomas, the more complex and costly function of the contract. Additionally, in the MS proposal it states that "Our teaming partner currently services DSCP/USDA

program locations that are part of this solicitation; its annual FFV sales are $33.5 million FY 2005 a large part of that dollar amount is current DSCP business. In essence MS is a broker who funnels the business to Thomas Fresh Point who already has a large contract with DSCP providing the same service.

Additionally, MS stated that they intend to use several small fresh fruit and vegetables suppliers as evidenced by an e-mail dated December 27, 2006. These suppliers were not part of the original proposals submitted to us by the contracting officer and MS final offer was dated December 13, 2007.

Based on the totality of the circumstances, taking into consideration all of the above factors, it is determined that MS is unduly reliant on its subcontractor, Thomas and thus the companies are affiliated. The contractor is also relying heavily on the experience and background of the subcontractor, who is supplying and shipping the produce. In *Size Appeal of Crown Support Services, Inc.*, SBA No. SIZ-3294 (1990), one of the factors mentioned was the emphasis placed upon the subcontractor's background and skills.

Therefore, the combined number of employees of MS, Thomas and Thomas' affiliates exceeds the size standard of 500 for this procurement.

**CONCLUSION:** SBA finds that MS is unusually reliant on its subcontractor, Thomas and Thomas will perform the primary and vital requirements of the contract. MS is therefore found to be affiliated with Thomas Brothers, Fresh Point and Sysco Corporation.

MS is found to be other than a small business for the referenced procurement with a size standard of 500 employees. This determination is effective immediately and remains in full force and effect unless and until reversed by the Office of Hearings and Appeals. Any person adversely affected by this decision has the right to file an appeal petition with SBA's Office of Hearings and Appeals (OHA).

This ruling does not prohibit MS from self-certifying as small on future procurements as this determination applies only to the procurement in question.

Mitchell Morand
Area Director

Date Decided: 6/5/08